Marcus BENSON, Appellant,

v.

STATE of Missouri, Respondent.

**WD 79136**

Missouri Court of Appeals,
Western District.

Opinion filed: February 28, 2017

S, Kate Webber, for Appellant.

Mary H. Moore, for Respondent.

Before Division One: James E. Welsh, Presiding Judge, Anthony Rex Gabbert, Judge and Edward R. Ardini, Jr., Judge

## EDWARD R. ARDINI, JR., JUDGE

Marcus R. Benson ("Benson") appeals the denial of his Rule 24.035[1] motion for post-conviction relief following his plea of guilty to one count of first-degree child endangerment under Missouri Revised Statutes section 568.045.[2] Benson argues that the plea court failed to establish a factual basis for the plea and that the plea was thus not knowingly, intelligently, and voluntarily made. Finding no error, we affirm.

## Factual and Procedural Background

Benson was originally charged in the Circuit Court of Jackson County with two counts of first-degree child endangerment for failing to seek appropriate medical attention and failing to provide proper nutrition to L.P. ("victim"). On October 19, 2012, Benson appeared before the plea court to enter a guilty plea to one count of child endangerment for failing to seek appropriate medical attention. The plea was the result of an agreement with the prosecutor who would, in exchange for the plea of guilty, dismiss the second count of child endangerment relating to the failure to provide proper nutrition and would recommend Benson be sentenced to seven years in prison with execution of the sentence suspended and placed on probation for a period of five years. Benson acknowledged that he understood the plea agreement and that he wished to enter a plea of guilty.

Victim was not Benson's biological daughter but had been living with Jacole Prince ("Prince"), who was the mother to two of Benson's children. During the course of entering the guilty plea, Benson admitted that victim was a child under the age of 17 at the time of the alleged criminal conduct and that victim had shown him her injuries, which he found to be so alarming that he said he would "whoop" Prince. Benson also admitted that he knew that victim's medical issues created a substantial risk to her life, body, or health, yet he knowingly failed to seek appropriate medical attention for her.

The plea court accepted Benson's guilty plea after finding that it was freely and voluntarily made with a full understanding of the nature of the charges and the consequences of pleading guilty, that it was not

---

1. All references are to Missouri Supreme Court Rules.

2. All statutory citations are to the Revised Statutes of Missouri, 2000, as supplemented prior to January 1, 2017.

the result of any threats or promises except for the plea agreement, and that there was a factual basis for the plea.

On October 10, 2013, Benson's probation was revoked and his seven-year prison sentence was executed. Benson timely filed his *pro se* motion for post-conviction relief, after which appointed counsel filed an amended Rule 24.035 motion. The motion court conducted an evidentiary hearing and then entered findings of facts and conclusions of law denying relief. Benson now appeals.

### Points Raised on Appeal

Benson's sole point raised on appeal asserts that the trial court erred in denying his Rule 24.035 post-conviction relief motion because the plea court failed to establish the factual basis for the plea as, he argues, no facts were presented to demonstrate that he owed a duty to seek appropriate medical attention for victim. Benson contends that as a result, the plea court accepted his guilty plea in violation of Rule 24.02. Further, because the plea court failed to establish what he argues is a necessary element of the charged offense, Benson claims that his plea was not knowing, intelligent, and voluntary, thus violating his right to due process of law.

### Standard of Review

■■■ The denial of a motion for post-conviction relief is reviewed for clear error. Rule 24.035(k). The motion court's judgment is "deemed clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *Generaux v. State*, 448 S.W.3d 355, 357–58 (Mo. App. W.D. 2014). The findings of fact and conclusions of law of the motion court are presumed correct. *Frantz v. State*, 451 S.W.3d 697, 699 (Mo. App. W.D. 2014).

### Discussion

■■■ Rule 24.02(e) provides that a court "shall not enter a judgment upon a plea of guilty unless it determines that there is a factual basis for the plea." The purpose of this rule is to ensure that "a defendant understand[s] the specific charges against him, that he understand[s] the maximum penalty confronting him, and that he recognize[s] that he has waived specific legal rights by pleading guilty." *Cafferty v. State*, 453 S.W.3d 791, 795 (Mo. App. W.D. 2014) (quoting *Calvin v. State*, 204 S.W.3d 220, 225–26 (Mo. App. W.D. 2006)). "A factual basis for a guilty plea is necessary to ensure that the guilty plea was intelligently and voluntarily entered, thereby satisfying due-process requirements." *O'Neal v. State*, 236 S.W.3d 91, 95 (Mo. App. E.D. 2007). The factual basis must exist on the record as a whole, but it does not need to be established by the defendant's own words or by an admission of the facts recited by the State. *Burnett v. State*, 450 S.W.3d 800, 805 (Mo. App. W.D. 2014). Rather, "[a] factual basis exists if the defendant understands the facts recited by the court and expresses an awareness of the nature and elements of the charge." *Generaux v. State*, 448 S.W.3d 355, 358 (Mo. App. W.D. 2014)

■■■ Under section 568.045, "[a] person commits the crime of endangering the welfare of a child in the first degree if: (1) [t]he person knowingly acts in a manner that creates a substantial risk to the life, body, or health of a child less than seventeen years old." Therefore, in a prosecution of this offense "[t]he state must prove the following elements: '(1) the defendant engaged in conduct, (2) in so doing, the defendant created a substantial risk to the life, body, or health of a child, (3) the victim was less than seventeen years old, and (4) the defendant acted knowingly

with respect to the facts and circumstances.' " *State v. Smith*, 502 S.W.3d 689, 695 (Mo. App. E.D. 2016) (quoting *State v. Short*, 186 S.W.3d 828, 830–31 (Mo. App. E.D. 2006)). Further, it is well established that one can be found guilty of child endangerment based on a failure to act, including a failure to provide necessary medical attention. *See, e.g., State v. Mahurin*, 799 S.W.2d 840, 843 (Mo. banc 1990) ("To withhold food and medical care is to act in a manner that puts a child at risk. Failure to provide medical treatment for a child violates [the child endangerment statute].") *Carmons v. State*, 26 S.W.3d 382, 385 (Mo. App. W.D. 2000) ("[T]he failure to act may subject an individual to prosecution for child endangerment.") *State v. Johnson*, 402 S.W.3d 182, 187 (Mo. App. E.D. 2013) ("A knowing failure to obtain adequate medical care can support a conviction for endangerment of a child when the failure to act creates a substantial risk to the life, body, or health of a child."); *State v. Fowler*, 435 S.W.3d 90, 94 (Mo. App. S.D. 2014) (same).

During the plea proceedings, Benson admitted on the record that victim was less than seventeen years old, that he had seen victim's injuries, that he knew that those injuries caused substantial risk to the life, body or health of victim, and that he had knowingly failed to seek appropriate medical attention. In short, Benson admitted to every required element of first-degree child endangerment unambiguously, on the record, before the court. Benson does not now contest the admissions made during the plea proceedings, nor does he contest that a failure to act can constitute child endangerment. Rather, Benson argues that section 562.011.4 required the plea court to establish, as part of the factual basis, that he owed victim a "duty to act."

Section 562.011.1 states that "[a] person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act." The section goes on to define a "voluntary act" as being either "[a] bodily movement performed while conscious as a result of effort or determination" or "[a]n omission to perform an act of which the actor is physically capable." Section 562.011.4 further provides that "[a] person is not guilty of an offense based solely upon an omission to perform an act unless the law defining the offense expressly so provides, or a duty to perform the omitted act is otherwise imposed by law." Benson argues that because he was charged with child endangerment based solely on a failure to act, and because section 568.045 (setting forth the charged offense) does not expressly provide that a failure to act constitutes a violation, the State would have been required to show that he owed a duty to seek appropriate medical attention for victim in order to convict. Benson further argues that because the State would have had to prove the existence of a duty to act, the plea court was equally required to find a factual basis for the same in order to meet the requirements of Rule 24.02(e).

■ What Benson fails to consider however, is that, as the motion court found, a factual basis on the duty to act issue was made during the plea proceedings. As the motion court noted, the issue of duty was the basis of a lengthy discussion between plea counsel, Benson, the plea court, and the prosecutor:

Plea Counsel: And we discussed that while you are not perhaps her legal guardian at this point in time, at one point you did?

Benson: Yes.

Plea Counsel: Or you were her guardian; is that right?

Benson: Yes.

Plea Counsel: And that if we were go to a jury trial, that they may very well find

you to be guilty based on that added level of the fact of having responsibility of the child, at least having had responsibility for the child at one point?

Benson: Yes.

Plea Counsel: So knowing that, are you at this point voluntarily entering your plea of guilt to endangering the welfare of a child?

Benson: Yes, I am.

Plea Counsel: Knowing that you failed to appropriate provide medical attention?

Benson: Yes.

Plea Counsel And that with the knowledge that that failure to provide medical attention could have caused substantial risk to the life and body of LP?

Benson: Yes.

Plea Counsel: No further questions, your Honor.

Prosecutor: In June of 2012 would you agree that LP was under the age of 17?

Benson: Yes

The Court: I have a couple of questions. Tell me if we need to go off the record or not. But I immediately said—I mean, I immediately looked at this, of course, and saw that there was the reference to staying in the closet. So is this one of the children who was in a closet for an extended time?

Prosecutor: Yes.

The Court: And the defendant lived there with her and knew that?

Prosecutor: It is the State's contention that he did live there and that he knew it. It's the defense's contention that he did not live there, that he just visited on occasion.

The Court: And the belief of the State is that the case that was identified by counsel is the case that you can prove; that you don't have sufficient evidence to prove that he knew that she was being kept in the closet for an extended period of time?

Prosecutor: Well, the State obviously believes that if we went to trial on these charges that we could prove that. Obviously there is also some evidence suggesting otherwise, that he wasn't living there. So it's a factual question for a jury in the end as to whether or not the State could in fact prove that he was living at that residence.

The Court: It just seems to me that there must be some—and I'm not second-guessing anybody; I'm just trying to be sure that I understand before I accept the plea, that really what you have limited the charges against him to for purposes of this plea are his knowledge that she had been injured presumably by Ms. Prince and that he didn't make sure she got medical care.

Prosecutor: That is what we limited the charges to. So the Court understands a little bit better, I don't think the allegations were ever that he personally locked her in the closet. That would be the actions of her mother. It would have been more that he knew that she was locked in the closet as opposed to him being the one who did the locking, so to speak.

The Court: And even with that, the decision of the State was not to proceed on separate charges relating to locking the child in the closet against him?

Prosecutor: Yes.

The Court: Are you pleading guilty because you're guilty?

Benson: Yes, your Honor.

The record from the plea hearing clearly establishes that the issue of legal responsibility and duty owed victim, as well as its factual underpinnings, was specifically explained to Benson. Benson consistently confirmed his understanding and agree-

ment to each detail or principle, expressed no confusion to any inquiry or statement and acknowledged that he was voluntarily pleading guilty. Moreover, at the time of his plea, Benson well understood the issue relating to the duty owed victim, as revealed through plea counsel's testimony at the evidentiary hearing on the 24.035 motion. Benson's plea counsel testified that he had discussed with Benson the issue concerning the duty owed victim, explained that he intended to "pound" the jury on this point, that he told Benson that he believed they would probably prevail at trial, and that it was Benson's decision to plead guilty despite counsel's own desire to try the case, all of which the motion court found to be credible. In light of the extensive exchange evidenced by the record of the plea hearing, and the testimony of plea counsel at the evidentiary hearing, the motion court did not commit error in concluding that a sufficient factual basis was established for Benson's guilty plea.

The judgment of the motion court is affirmed.

All concur.