Gary D. Witt, Judge
Sean Knox ("Knox") pled guilty to one count of Rape in the First Degree in the *390 Circuit Court of Lafayette County, Missouri. Following his guilty plea, but before sentencing, Knox obtained new counsel and filed a Motion to Withdraw Guilty Plea pursuant to Missouri Supreme Court Rule 29.07(d). The court denied Knox's motion and sentenced him to 17 years' imprisonment. Final judgment was entered and this appeal followed.
Knox was charged with raping a woman he met at a party ("Victim").[1] According to the Victim's statements, she had been drinking heavily throughout the evening. Victim laid down on a couch and later began throwing up in a trash can beside the couch. Victim awoke and remembered Knox asking if she wanted to go with him to the bedroom and she responded no. Victim then passed out on the couch and awoke to Knox having sex with her. She testified that she attempted to stop Knox, tried to push him off of her and told him she did not want to have sex but he did not stop. After he finished he kissed her forehead and said thank you and then stated that he was sorry. When Knox left the room, the Victim left the residence and reported the rape.
On December 19, 2016, Knox appeared before the circuit court and entered an open guilty plea, meaning that there was no plea agreement with the state and the sentence was left to the discretion of the trial court. The court questioned Knox regarding his mental capacity to plead, his satisfaction with his attorneys and the representation they had provided. The court also advised Knox of the constitutional rights he was waiving by entering a guilty plea, which he acknowledged.
The court questioned Knox under oath regarding the factual basis for his plea. When the court asked how the Victim lacked capacity to consent to sexual intercourse, the prosecutor answered that the victim was drunk and passed out. Defense counsel clarified to the court that Knox did not agree that she was "passed out" but he did agree that she was too intoxicated to consent. In further questioning directed at Knox, he acknowledged that she was "very drunk" but then equivocated as to whether he was aware at the time of the offense that she was too intoxicated to consent. After his equivocation the plea court stated, "Well, I need more than that." Knox then had a further consultation with his counsel off the record.
Knox then, back on the record, had the following exchange with the court:
[Knox]: I didn't think she was incapacitated at the time to where she couldn't consent. But I do believe that in the situation that it was, I do believe it was not right.
[Court]: It doesn't sound to me like we have a plea.
The Court then gave Knox an opportunity to again confer with counsel. The Court instructed Knox "whatever you want to do, sir. Just work with your attorneys and make a determination which way you want to go, all right?" Following consultation with counsel, Knox informed the court on the record that he wanted to plead guilty. The plea court informed Knox that he was not required to plead guilty and that it was his option whether to enter a plea or not and Knox acknowledged he understood that fact. The court went on to explain that he could not accept a plea of guilty unless the party admitted to committing the offense.
The following exchange then occurred:
*391 [Court]: So when we quit we were talking about what took place, and I asked you if on or about October 9th, 2015, in the County Lafayette, State of Missouri you knowingly had sexual intercourse with [Victim], a person who was incapacitated or incapable of-it says content, but I'm sure it means consent-
[State]: Yes, Judge.
[Court]: -or lacked capacity to consent, and you had said yes but then I inquired a little further about why there was a lack of consent and I think that is where we had some confusion.
[Knox]: Right.
Q: It's my understanding there was some alcohol consumed-
A: Yes, sir.
Q: -and that maybe she had consumed it to the point where she had actually threw up?
....
Q: Okay. That would be an indication that she was pretty drunk.
A: Yes, sir.
Q: And drunk enough that she probably didn't have-or she would not have had the capacity to consent and to the point where she would be incapable of consent. Would you agree with that?
A: Yes, sir.
Q: And even though she was in that condition, you went ahead and had sexual intercourse with her?
A: Yes, sir.
Q: And you understand why that is now a problem?
A: Yes, sir.
Q: Does that clear up any questions you had, sir?
A: It does, yes, sir.
The court then continued on to confirm that no one had threatened Knox or any family member to coerce him to enter his plea. The court also made clear that Knox understood the range of punishment to be five to 30 years or life imprisonment and that, as an open plea, the court could impose any sentence in that range. The court further made clear that he could be sentenced up to life in prison and that Knox would not be able to withdraw his plea, even if the court gave him the maximum sentence. Ultimately, the court accepted Knox's plea.
Before Knox was sentenced, Knox obtained new counsel and filed a Motion to Withdraw Guilty Plea pursuant to Rule 29.07(d)[2] ("Motion"). Knox argued that his plea was not knowing, voluntary or intelligent. Specifically, Knox alleged that he was not advised by his attorneys that he would be ineligible for probation or that he must complete at least 85% of any sentence before being eligible for parole. Nor was he told that he must complete sex offender treatment prior to being eligible for parole, would be subject to lifetime GPS monitoring and supervision, would have to register as a sex offender, and could be subject to civil commitment. Further, Knox alleged that his counsel failed to explain to him all the elements of the crime and failed to provide him the Victim's deposition in which he alleges she never stated that the sexual contact was not consensual and also alleges she testified in the deposition to her belief that she was not incapacitated at the time of the rape.[3] Knox stated that he only pled guilty *392 out of fear because he felt threatened by his attorney who told him that if he did not plead guilty and went to trial the court would give him a worse sentence, possible life imprisonment.
The circuit court held a hearing on the Motion on March 6, 2017. Knox was the only witness and testified consistently with the allegations raised in the Motion on most issues. However, contrary to his Motion, Knox testified at the hearing that his attorneys did make him aware that he would have to serve at least 85% of any sentence imposed by the court before being eligible for parole. A point the circuit court recognized. Knox did not call his prior counsel as a witness at the hearing. Following the hearing, the court found the plea to be voluntary, intelligent and knowing, and denied the Motion to set aside the plea.
A sentencing hearing was held. The court sentenced Knox to 17 years' imprisonment. This appeal followed.
Discussion
Before we begin, we must address the State's initial argument that this Court lacks authority to consider this appeal. The State cites to several cases that have found that the denial of a Rule 29.07(d) motion is not a final judgment from which an appeal can be taken. Stevens v. State , 208 S.W.3d 893 (Mo. banc 2006). The State later, however, admits that this is not an appeal from a denial of a Rule 29.07(d) motion. Knox is appealing the final judgment and sentence, raising the denial of his 29.07(d) motion as an allegation of error. Thus, the State's argument is without merit.
Next, the State argues that there is case law finding that an appellate court has no jurisdiction to consider an appeal of "a Rule 29.07(d) motion that is filed and ruled on after sentencing when that motion seeks relief for claims that may be raised in a Rule 24.035 motion for post conviction relief." See Brown v. State , 66 S.W.3d 721 (Mo. banc 2002) (overruled on other grounds by State ex rel. Zinna v. Steele , 301 S.W.3d 510, 517 (Mo. banc 2010) ). Since the Rule 29.07(d) motion in the case at bar was filed before sentencing, reciting the holdings of these cases also has no merit. This case is procedurally a direct appeal from the final judgment which incorporates allegations of error in the court's ruling on the 29.07(d) motion. It is not, as was the case in Brown , a post-conviction motion seeking to avoid the time limitations of Rule 24.035. Brown , 66 S.W.3d at 724-25.[4]
The State's argument that this Court lacks jurisdiction for this appeal runs contrary to the holding in Wilder v. State , 301 S.W.3d 122 (Mo. App. E.D. 2010). In Wilder , the Eastern District of this Court *393 found that, because Wilder could have raised the denial of his 29.07(d) motion on direct appeal, but failed to, he was then barred from raising it in a motion for post-conviction relief. Id. at 126.
It is clear from the case law, including those cases cited by the State, that this Court has authority to hear Knox's appeal. The State confuses the procedural posture of the cases it cites, correlating the holdings of cases in which the 29.07(d) motion was brought after sentencing as procedurally the same as cases, such as the present case, where the 29.07(d) motion was brought before sentencing. The State also supports its position with the holdings of cases not involving a Rule 29.07(d) motion challenge but merely addressing the direct appeal of a case in which the defendant did not seek to set aside his or her plea. See, e.g., State v. Klaus , 91 S.W.3d 706, (Mo. App. E.D. 2002) ; State v. Cooper , 501 S.W.3d 492 (Mo. App. W.D. 2016). To determine the authority of this Court to hear this direct appeal from a judgment incorporating the denial of a 29.07(d) motion, we look only to procedurally comparable cases in which a 29.07(d) motion was brought before sentencing. All other cases cited by the State have other procedural considerations which are distinguishable and not at issue herein.
Further, we disagree with the State's argument that, to the extent this Court has authority to hear this case, its authority is limited to only those issues that may be raised in a Rule 24.035 setting and is limited by the bounds of such a request for post-conviction relief. Elam v. State , 210 S.W.3d 216, 219 (Mo. App. W.D. 2006) ("[I]f a defendant raises claims in a Rule 29.07(d) motion which are within those enumerated in Rule 24.035, the motion remains a Rule 24.035 motion and is subject to all the terms and conditions of Rule 24.035, including time limitations."). Whether the State believes that there is a "meaningful basis to treat defendants who file such motions before sentencing differently than those who file them after sentencing" is immaterial. Rule 29.07(d) and Missouri courts have explicitly found a clear distinction, and this Court is bound by the clear terms of the rule and existing case law.
Standard of Review
A trial court has discretion to grant or deny a motion to withdraw a guilty plea prior to sentencing. State v. Johnson, 529 S.W.3d 36, 42 n.5 (Mo. App. W.D. 2017). Prior to sentencing, the withdrawal of a guilty plea is freely allowed. Id. This court's review of the denial of a motion to withdraw a guilty plea is whether the trial court's decision to deny the motion was clearly erroneous. State v. Vogt, 304 S.W.3d 209 (Mo. App. W.D. 2009).
We are governed in this proceeding to withdraw the guilty plea by certain well recognized principles: (1) on appeal from a denial of a motion to withdraw a guilty plea our review is limited to a determination of whether the ruling of the trial court was clearly erroneous, Young v. State , 438 S.W.2d 280, 283 (Mo. 1969), State v. Davis , 438 S.W.2d 232, 234 (Mo. 1969), or there was an abuse of discretion; (2) the burden is on the movant to prove by a preponderance of evidence that the court erred in overruling the motion to withdraw the plea of guilty, cf. Beach v. State , 488 S.W.2d 652, 656 (Mo. 1972) ; (3) a movant does not have an absolute right to withdraw his plea of guilty whether before or after sentence, State v. Jackson , 514 S.W.2d 638, 641 (Mo. App. 1974), and may do so only in extraordinary circumstances, Mooney v. State , 433 S.W.2d 542, 544 (Mo. 1968) ; and (4) if there is evidence that the defendant was misled or induced *394 to plead guilty because of fraud, mistake, misapprehension, fear, persuasion or holding out of hopes which prove to be false or ill-founded, he should be permitted to withdraw his plea since the law favors a trial on the merits, State v. Rose , 440 S.W.2d 441, 443 (Mo. 1969).
State v. Nielsen , 547 S.W.2d 153, 158 (Mo. App. 1977) (internal footnote omitted); State v. England , 599 S.W.2d 942 (Mo. App. S.D. 1980).[5]
I.
Knox's first point on appeal alleges that the circuit court erred in failing to sustain his Rule 29.07(d) motion because he established that his plea was a result of duress, fear, and due to a failure by Knox's attorney to properly explain various available defenses.
Knox raises multiple factors that support his general argument that his plea was made under duress. Ultimately, while these factors all relate to the underlying question of whether the plea was "voluntary" and free from duress the point relied on is multifarious in that it both presents distinct claims of error that should be asserted in separate points relied on. See State v. Robinson , 454 S.W.3d 428, 437 n.6 (Mo. App. W.D. 2015). In general, multifarious points preserve nothing for appellate review and are subject to dismissal. However, because we prefer to decide cases on the merits where appellant's argument is readily understandable-as is the case here-we have elected to exercise our discretion to review the merits of the arguments presented.
Knox specifically argues that his plea was made under duress because: (1) there was a lack of factual basis for his plea; (2) he was told by his attorney that he would receive a life sentence if he did not plead guilty; and (3) he was not told by his attorney that the victim had made conflicting statements in her deposition regarding her capacity to consent.
The State argues that these claims are merely claims that Knox's attorney was ineffective and thus are not recognized claims available to be raised in a direct appeal. Rule 24.035(a). The State makes no argument as to why this Court should review Knox's claims as ineffective assistance of counsel claims but merely treats them as such in its brief. While certainly the attorney's actions are at issue, they are merely ancillary to the ultimate question of whether Knox was under duress or fear when entering his plea or, as related to his second point on appeal, whether his plea was voluntary. He does *395 not claim that the judgment should be overturned because his counsel was ineffective, merely that based, in part, on his attorney's actions or inactions, his plea did not meet the voluntariness requirements of Rule 24.02(e) and should be set aside. We reject the State's argument in this regard and proceed to the substantive issues presented by Knox.
A.
Knox correctly notes that under Rule 24.02(e), "[t]he court shall not enter a judgment upon a plea of guilty unless it determines that there is a factual basis for the plea." Thus, the plea court must determine whether the facts to which the defendant admits are sufficient to find that he is guilty of the offense charged. Hoskin v. State , 863 S.W.2d 637, 689 (Mo. App. E.D. 1993). If the facts presented to the court during the guilty plea do not establish the commission of the offense, the court should reject the guilty plea. State v. Morton , 971 S.W.2d 335, 340 (Mo. App. E.D. 1998). "The purpose of this rule is to ensure that a defendant understand[s] the specific charges against him, that he understand[s] the maximum penalty confronting him, and that he recognize[s] that he has waived specific legal rights by pleading guilty." Benson v. State, 511 S.W.3d 488, 490 (Mo App. W.D. 2017). (internal quotations omitted). "A factual basis for a guilty plea is necessary to ensure that the guilty plea was intelligently and voluntarily entered, thereby satisfying due-process requirements." O'Neal v. State , 236 S.W.3d 91, 95 (Mo. App. E.D. 2007). "The factual basis must exist on the record as a whole, but it does not need to be established by the defendant's own words or by an admission of the facts recited by the State." Benson , 511 S.W.3d at 490. "A factual basis exists if the defendant understands the facts recited by the court and expresses an awareness of the nature and elements of the charge." Generaux v. State , 448 S.W.3d 355, 358 (Mo. App. W.D. 2014). "[I]t is not necessary that every element of the crime be explained so long as the defendant understands the nature of the charges against him." Wofford v. State , 73 S.W.3d 725, 727 (Mo. App. W.D. 2002).
Knox first claims that there was not a factual basis for his plea because he failed to understand all the required elements of the offense. While Knox initially may not have expressed an understanding of the consent element of the offense, the court gave Knox additional time to consult with his attorney regarding this issue. Further, the court correctly walked Knox through the facts of the case which established the Victim was unable to consent-a fact to which Knox agreed. This case is distinguishable from cases in which the defendant has denied an element of the crime and the court has continued with the proceedings and accepted the plea. See, e.g., Saffold v. State , 982 S.W.2d 749 (Mo. App. W.D. 1998). In Saffold , the defendant denied "knowingly" participating in the charged crime of sodomy yet the court accepted his guilty plea to a crime in which knowledge was an essential element. Id. at 754.
In this case, the court walked Knox through each essential element of the crime and Knox confirmed the factual basis for each element of the offense. Knox was given multiple opportunities to speak privately with his attorney regarding any questions he may have. After explanations from the court and after private consultations with his attorney, Knox never indicated that he did not agree that all the essential elements of the crime were met or that he disagreed with the facts as presented by the court. Knox's assertion that he never indicated he had sexual relations *396 with a person incapable of giving consent is incorrect. Having confirmed that he had sexual relations with the Victim, Knox agreed with the court that the Victim was drunk enough that "she would not have had the capacity to consent and to the point where she would be incapable of consent."
Knox testified at the motion hearing that his later agreement with the court's factual statements was due to duress and coercion by plea counsel during those private consultations. Specifically, Knox testified that during a break in the proceedings his attorney told him that he would go to prison for life if he did not answer the questions in the way the court phrased them. First, Knox bore the burden of proving these facts and the circuit court is free to believe or disbelieve a witness even when the testimony is not contradicted. Duncan v. State , 539 S.W.3d 95, 105 (Mo. App. W.D. 2018) ; Arata v. State , 509 S.W.3d 849, 852 (Mo. App. S.D. 2017). While Knox testified that his attorney told him he would receive a life sentence if he did not plead guilty, the court was free to disbelieve this testimony. Further, as the State notes, "[a]n attorney's mere prediction of a sentence or of punishment the court will impose does not necessarily constitute coercion which renders a guilty plea involuntary." White v. State , 954 S.W.2d 703, 706 (Mo. App. W.D. 1997). "[A]n able attorney will endeavor to help his or her client understand all of the possible consequences of alternatives and strategies." Id. In this case, Knox was charged with a Class A felony that carried with it the possibility of a life sentence. The attorney was truthful and acting competently when he informed Knox that, if he did not plead guilty, he risked a life sentence. In fact he still faced the possibility of a life sentence by entering an open plea of guilty, a fact which was fully explained to Knox by the plea court. An attorney is not coercing his or her client by fully advising the client of the range of punishments available to the court and offering legal advice to the client based on the attorney's experiences.
Knox notes that this Court has stated that it is advisable when questioning a defendant during a guilty plea for the plea court to ask: "[h]as your attorney or anyone else made any threats or promises to you whatsoever in order to convince you to plead guilty?" Samuel v. State , 284 S.W.3d 616, 618-19 (Mo. App. W.D. 2009). Heeding this advice, the court did ask Knox of anyone had "threatened or abused" him into a guilty plea. Knox argues that this did not go far enough. He fails, however, to offer any legal support for his argument or setting forth what further questions the court could have or should have asked. Informing a client as to the full range of punishment that may occur is not a form of threat or abuse. The court would not have been prevented from accepting Knox's plea even if additional questioning had occurred.
As to Knox's argument that his counsel failed to inform him that Victim made conflicting statements in her deposition regarding her capacity to consent to sexual contact, Knox failed to provide the deposition to this court on appeal. We presume that materials omitted from the record on appeal support the trial court's decision. State v. Evans , 410 S.W.3d 258, 267 n.5 (Mo. App. W.D. 2013).
The circuit court did not err in finding that Knox's guilty plea was made knowingly and voluntarily.
II.
Knox's second point on appeal alleges that the circuit court erred in failing to sustain his Rule 29.07(d) motion because he established the plea was not made *397 knowingly because his attorney failed to explain the direct and collateral consequences of pleading guilty.
Knox alleges that his plea was not voluntary and knowing because he was not advised of the collateral consequences of his guilty plea, specifically that he was not told that he would have to serve 85% of his sentence, register as a sex offender, be subject to lifetime monitoring and supervision, and potential civil commitment.
The question of collateral consequences has been addressed within the framework of a post-conviction relief motion addressing the effectiveness of a defendant's counsel. Missouri courts have found that "both the trial court and a defendant's plea counsel have a duty to inform such defendant of the direct consequences of pleading guilty, but neither has a duty to advise such defendant of a guilty plea's collateral consequences." Johnson v. State , 318 S.W.3d 313, 317 (Mo. App. E.D. 2010). The direct consequences of a plea are set forth in Rule 24.02(b) and include "the nature of the charges, the maximum possible and mandatory minimum penalties, the right to be represented by an attorney, the right not to plead guilty, and the defendant's waiver of all trial rights if he pleads guilty." State v. Rasheed , 340 S.W.3d 280, 284 (Mo. App. E.D. 2011). "[D]irect consequences are ones that 'definitely, immediately, and largely automatically' follow the entry of a plea of guilty." Id. (citation omitted). "Although it is necessary to inform a defendant of all 'direct consequences' of a guilty plea, plea counsel is not required to inform a defendant of 'collateral consequences.' " McCoy v. State , 456 S.W.3d 887, 893 (Mo. App. W.D. 2015). Issues concerning parole eligibility and registration requirements are generally deemed to be "collateral consequences" and not required to be disclosed to the defendant. Id.
Knox presents no argument to support the contention that failure to be informed of collateral consequences of a plea by counsel may render a guilty plea to be not knowing, voluntary or intelligent to justify a withdrawal of the plea under Rule 29.07(d). Instead, Knox argues that, in light of Padilla v. Kentucky , 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), Missouri now has "concluded that defense counsel may be ineffective by misadvising a defendant about parole eligibility." In Padilla , the court held that the defendant must be informed of immigration consequences resulting from a plea. Id. at 369, 130 S.Ct. 1473. Knox sole support for the contention that Missouri has expanded the narrow holding of Padilla to parole eligibility is Davis v. State , 497 S.W.3d 307, 307-08 (Mo. App. S.D. 2016). In Davis, in a claim of ineffective assistance of counsel, it was alleged that plea counsel affirmatively misadvised defendant as to parole eligibility. Id. at 308. The Eastern District did not hold that Padilla was applicable, it in fact does not even mention Padilla , but merely remanded the case to the circuit court for findings of fact and conclusions of law as to whether trial counsel did, in fact, misadvise the defendant and whether the court found that there was prejudice if he was misadvised. Id. Even if the Court had expressed an opinion as to Padilla , Missouri courts analyze "mistakes" in advice differently than "omissions" in the advice. "A guilty plea is not voluntary if the defendant was mislead [sic] or induced to plead guilty by fraud or mistake." McCoy , 456 S.W.3d at 895 (citing Roberts v. State , 276 S.W.3d 833 (Mo. banc 2009) ). Thus, Davis is inapplicable to this matter.[6] Further, we *398 can find no support for an expanded requirement for disclosure of collateral consequences in Missouri post- Padilla .
Further, as previously addressed, this is not a claim of ineffective assistance of counsel. This is a claim of whether the trial court committed clear error in failing to grant Knox's motion to withdraw his guilty plea. As noted above, the circuit court is free to believe or disbelieve a witness even when the testimony is not contradicted. Duncan v. State , 539 S.W.3d 95, 105 (Mo. App. W.D. 2018) ; Arata v. State , 509 S.W.3d 849, 852 (Mo. App. S.D. 2017). Knox testified at his Motion hearing that he was not informed by counsel of the collateral consequences of his plea. But, Knox bore the burden of proving that he was not so informed and that based on this lack of information his plea was not made knowingly and voluntarily. While Knox testified to some of the facts argued in his Motion before the plea court, he also contradicted his claim that he was not informed that he would be forced to serve 85 percent of his sentence before being eligible for parole. The trial court was not required to find his self-serving testimony credible or persuasive especially when some of his testimony controverted his own claims.[7] As such, we find that the circuit court did not clearly err in denying Knox's motion to set aside his plea.
Conclusion
The circuit court properly questioned Knox to determine that his guilty plea was knowing, voluntary and intelligent. The court's finding that Knox failed to meet his burden of proof that his plea was unknowing or involuntary was not clearly erroneous. It was not error to deny the motion to set aside the plea. We affirm.
All concur

Pursuant to § 595.226, RSMo. 2016, we do not use the name of the victim in this opinion to protect her privacy.

All rule references are to Missouri Supreme Court Rules (2017).

This deposition was not provided to this court on appeal. Knox bore the burden of providing this court with all evidence necessary to the determination of the legal issues presented. Rule 30.04. We presume that materials omitted from the record on appeal support the trial court's decision. State v. Evans , 410 S.W.3d 258, 267 n.5 (Mo. App. W.D. 2013).

The same distinction is confused throughout the State's brief. The State argues that the voluntariness of the plea can only be challenged in a Rule 24.035 motion, citing State v. Onate , 398 S.W.3d 102 (Mo. App. W.D. 2013). However, in Onate , the Rule 29.07(d) motion was not filed before sentencing. Id. at 103. This Court correctly held that a motion for new trial, filed after a plea of guilty, cannot be converted into a Rule 29.07(d) motion, and questions as to the voluntariness of the plea should have been raised under rule 24.035. Id. at 107-08. However, Onate is inapplicable to a properly raised Rule 29.07(d) motion filed before sentencing. See also , the State's citation to State v. Creamer , 161 S.W.3d 420 (Mo. App. W.D. 2005). In Creamer , this Court correctly noted that "[o]nce a defendant has made a guilty plea, he may seek to withdrawal before sentencing under Rule 29.07(d) and after sentencing only under Rule 24.035." Id. at 424 (emphasis added). This is a case in which the challenge to the plea was properly raised before sentencing under Rule 29.07(d). Thus Creamer is inapplicable.

The Standards of Review argued by the parties in their briefing are likewise from cases procedurally distinct from the issues presented in this case. The State argues that a Rule 29.07(d) motion should only be granted to correct "manifest injustice." This refers to the circuit court's standard for granting a motion to set aside a guilty plea after sentence, not this Court's standard for review of the denial of such a motion by the trial court prior to sentencing. Rule 29.07(d) ("A motion to withdraw a plea of guilty may be made only before sentence is imposed or when imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea .) (emphasis added). The State cites to State v. Thomas , 96 S.W.3d 834 (Mo. App. W.D. 2002) which procedurally involved the filing of a Rule 29.07(d) motion after sentencing, thus requiring a finding of manifest injustice under the rule. Knox cites to State v. Taylor , 929 S.W.2d 209 (Mo. banc 1996) for the standard of review, which also involved a Rule 29.07(d) motion filed after sentencing, falling within the second clause of the rule, requiring a finding of manifest injustice. Neither party recognizes our proper standard of review applicable to this matter which is to determine if the ruling of the trial court in denying the motion was clearly erroneous.

While Davis is inapplicable, a year after Padilla was decided, the Missouri Supreme Court revisited the distinction between direct and collateral consequences resulting from a guilty plea. Webb v. State , 334 S.W.3d 126 (Mo. banc 2011). The Webb court held that "where counsel misinforms the client as to the effects of the client's plea, the counsel has rendered ineffective representation." Id. at 127. Webb does not otherwise expand or address Padilla 's effect on claims that plea counsel must inform a defendant regarding collateral effects of the client's plea outside of the immigration context. "Recent Missouri cases ... have 'declined to expand Padilla's reasoning beyond the deportation context into parole matters.' " Johnson v. State , 451 S.W.3d 276, 280 (Mo. App. W.D. 2014) (quoting Simmons v. State , 432 S.W.3d 306, 310 (Mo. App. E.D. 2014) ). Knox's claims are based on his attorney failing to advise him as to collateral consequences; Knox makes no claim that his attorney misinformed him as to collateral consequences.

Irrespective of the Rule 24.035 collateral consequences analysis, if the trial court had in fact been persuaded that Knox was not informed of significant collateral consequences of his plea, the trial court could have exercised its discretion and granted the motion, however, based on this record we do not find that the court clearly erred in the denial of that motion.