

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD83370 |
| | ) | |
| T'ODDRE D. HUDSON, | ) | Opinion filed: April 27, 2021 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
THE HONORABLE S. MARGENE BURNETT**

Division Three: Thomas H. Newton, Presiding Judge,
Gary D. Witt, Judge and W. Douglas Thomson, Judge

T'Oddre D. Hudson ("Hudson") appeals from the judgment of the Circuit Court of Jackson County convicting him of one count of first-degree sodomy, one count of attempted first-degree robbery, and two associated counts of armed criminal action. In his sole point on appeal, Hudson claims that the motion court clearly erred in overruling his pre-sentence Rule 29.07(d) motion to withdraw his guilty plea on the ground that his plea was entered involuntary and without understanding. We affirm.

**Factual and Procedural History**

In August 2014, two men approached a parked vehicle and, at gunpoint, demanded the occupants, a male and female, get out of the vehicle. The two men then ransacked the vehicle and attempted to drive away. However, because the men could not operate a manual transmission, they were unable to take the vehicle. The armed men then made the female victim get back into the vehicle, where one of the men forced her, at gunpoint, to perform oral sex upon him to completion. While this act of sodomy occurred, the male victim was held at gunpoint on the pavement some distance from the vehicle. After hearing sirens, the two men fled. Afterwards, the female victim was immediately transported to the hospital where her mouth was swabbed for evidence. The test results indicated the presence of semen which a DNA analyst later determined belonged to Hudson.

On October 2, 2015, Hudson was indicted on one count of sodomy in the first degree, one count of robbery in the first degree, and two counts of armed criminal action. On October 22, 2015, Hudson's counsel entered his appearance. A jury trial was scheduled to begin on April 24, 2017, but six days before trial was set to begin, Hudson's plea counsel filed a motion for a mental examination. The trial court sustained the motion and ordered a mental examination, canceled the April 24 trial date, and rescheduled Hudson's jury trial for September 25, 2017. However, the doctor who was to perform Hudson's mental examination reported to the court that Hudson had "refused transportation to the examination site or to participate in the evaluation" and that Hudson's plea counsel had not responded to the doctor's request

about whether Hudson was willing to be examined. Hudson's September 25, 2017, trial date was later continued to May 21, 2018.

On May 18, 2018, at the pretrial conference, Hudson entered an *Alford* plea. In exchange for his plea, the parties agreed that the court would sentence Hudson to at least 16 years in prison, but to no more than 22 years in prison, and the State would dismiss an unrelated drug case. During the plea colloquy, Hudson testified to the plea court that he understood he was entering an *Alford* plea to the charges, that he had read the reports related to the evidence, and that he had an opportunity to talk with his attorney. Hudson acknowledged the rights which he was waiving by pleading guilty and the adverse consequences that would stem from his guilty plea. Hudson acknowledged that he was not threatened or coerced into entering his plea, that he had enough time to talk to plea counsel, and that counsel had done what he had asked him to do. Upon the State's recitation of the factual basis, Hudson's plea counsel confirmed to the court that the evidence described was the information he had received in discovery and shared with Hudson. Hudson reiterated the accuracy of the evidence and further agreed that based on the evidence, "there [was] a substantial likelihood a jury would find [him] guilty." The court accepted Hudson's guilty plea, finding it was made freely, voluntarily, and with understanding, and ordered a sentencing assessment report.

About two weeks before the sentencing hearing, Hudson's plea counsel withdrew from the case and new counsel entered a limited appearance on Hudson's behalf for the purpose of filing a motion to withdraw Hudson's plea. On September

3

27, 2018, Hudson filed a motion to withdraw his plea under Rule 29.07(d)[1], claiming his plea was involuntary. In doing so, Hudson alleged that he "did not fully understand the consequences of his plea and did not have adequate time with his attorney to fully discuss his discovery, trial preparation, or trial strategy." Hudson furthered alleged that he "felt he had no other options" but to plead guilty because "[i]t was readily apparent to [Hudson] that counsel was unprepared for trial," and that this "induced" him into entering into the plea agreement. Following an evidentiary hearing, the court denied Hudson's motion.

On November 29, 2018, the court sentenced Hudson to twelve years imprisonment for the offense of sodomy, to run concurrently with consecutive sentences of five and three years for robbery and armed criminal action, respectively.

After sentencing, Hudson appeals the trial court's denial of his Rule 29.07(d) motion.[2] Further factual details will be outlined as relevant in the analysis below.

**Standard of Review**

A trial court has discretion to grant or deny a motion to withdraw a guilty plea prior to sentencing. *Johnson v. State*, 529 S.W.3d 36, 41 n.5 (Mo. App. W.D. 2017). In reviewing the trial court's decision:

> We are governed . . . by certain well recognized principles: (1) on appeal from a denial of a motion to withdraw a guilty plea our review is limited to a determination of whether the ruling of the trial court was clearly erroneous, *Young v. State*, 438 S.W.2d 232, 234 (Mo. 1969), *State v.*

---

[1] All Rule references are to Missouri Supreme Court Rules (2018), unless otherwise indicated.

[2] Hudson currently has two pending cases before this Court, this case and WD83748, in which Hudson has appealed the trial court's denial of his Rule 24.035 motion. This unique situation has occurred because Hudson was granted leave to file a late appeal by this Court in the instant case as the result of counsel's failure to file Hudson's notice of appeal. By that time, his 24.035 hearing had occurred in the plea court and had been appealed in due course.

4

*Davis*, 438 S.W.2d 232, 234 (Mo. 1969), or there was an abuse of discretion; (2) the burden is on the movant to prove by a preponderance of evidence that the court erred in overruling the motion to withdraw the plea of guilty, cf. *Beach v. State*, 488 S.W.2d 652, 656 (Mo. 1972); (3) a movant does not have an absolute right to withdraw his plea of guilty whether before or after sentence, *State v. Jackson*, 514 S.W.2d 638, 641 (Mo. App. 1974), and may do so only in extraordinary circumstances, *Mooney v. State*, 433 S.W.2d 542, 544 (Mo. 1968); and (4) if there is evidence that the defendant was misled or induced to plead guilty because of fraud, mistake, misapprehension, fear, persuasion or holding out of hopes which prove to be false or ill-founded, he should be permitted to withdraw his plea since the law favors a trial on the merits, *State v. Rose*, 440 S.W.2d 441, 443 (Mo. 1969).

*State v. Knox,* 553 S.W.3d 386, 393-94 (Mo. App. W.D. 2018) (quoting *State v. Nielsen*, 547 S.W.2d 153, 158 (Mo. App. 1977)) (internal footnote omitted).

**Analysis**

Preliminarily, we address the State's arguments that this Court lacks authority to consider this appeal. First, the State asserts we have "no authority to consider the merits of Defendant's claim that the trial court erred in overruling his pre-sentence Rule 29.07(d)[3] motion to withdraw his guilty plea, because . . . a direct appeal of a conviction following a guilty plea is limited only to challenges involving the circuit court's subject-matter jurisdiction, the sufficiency of the charging document, or possibly excessive sentencing and Defendant's claim on appeal, which involves a claim of ineffective assistance of counsel before the plea, does not fall into any of these categories . . . ." In making this assertion, the State relies upon *State v.*

---

[3] Rule 29.07(d) provides: "A motion to withdraw a plea of guilty may be made only before sentence is imposed or when imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

5

*Rohra*, 545 S.W.3d 344, 347 (Mo. banc 2018) and *State v. Russell*, 598 S.W.3d 133, 139 (Mo. banc 2020). However, the State fails to consider the differences in procedural posture of *Rohra* and *Russell*, as compared to the case at hand. *Rohra* challenged a motion to dismiss filed post-plea, not a 29.07 motion at all. *State v. Rohra*, 545 S.W.3d at 346. *Russell* addressed a 29.07 motion filed after sentencing (a post-sentence 29.07) whereas the case at hand involves a 29.07 motion filed before sentencing (a pre-sentence 29.07). *State v. Russell*, 598 S.W.3d at 136. Although Rule 29.07 has a very limited role following the imposition of sentence (a post-sentence 29.07), as suggested by the State's argument, it may permit broader relief at earlier stages of a criminal proceeding. *See State v. Onate*, 398 S.W.3d 102, 106 (Mo. App. W.D. 2013) (citing *Brown v. State*, 66 S.W.3d 721, 730-31 n.5 (Mo. banc 2002) (overruled on other grounds in *State ex rel. Zinna v. Steele*, 301 S.W.3d 510 (Mo. 2010)). Because the cases relied upon by the State are not in same procedural posture as the case at bar, further analysis has no merit. *See State v. Knox*, 553 S.W.3d at 393. The Missouri Supreme Court has expressly held that a defendant who pleads guilty may appeal from a final judgment convicting and sentencing him to challenge the circuit court's denial of the defendant's pre-sentence Rule 29.07(d) motion. *Stevens v. State*, 208 S.W.3d 893, 894-95 (Mo. banc 2006); *accord*, *State v. Knox*, 553 S.W.3d at 392-93 (holding that the Court had appellate jurisdiction to consider a direct appeal from a final criminal judgment entered after a guilty plea to review whether the circuit court properly denied the defendant's pre-sentence Rule 29.07(d) motion); *State v. McAfee*, 462 S.W.3d 818, 822 (Mo. App. E.D. 2015) (same).

6

Second, the State asserts we have no authority to consider the merits of Defendant's claim because "the 'exclusive procedure' for asserting a claim of ineffective assistance of counsel affecting the voluntariness of the guilty plea is through a Rule 24.035 motion for postconviction relief." In making this assertion, they rely upon *Brown*, which is inapposite to their first argument, *supra*. Indeed, even the State admits "that Rule 29.07(d) could still be used to raise claims before the defendant is sentenced . . . ." *See Brown v. State*, 66 S.W.3d at 728-29. The State, however, then seeks to draw a line in the sand, suggesting that Rule 29.07(d) claims cannot address a claim within the "exclusive province of Rule 24.035." In doing so, it again seems the State is confused about the importance of Hudson's procedural posture as a *pre-sentence* 29.07(d) motion, and not a post-sentence, post-conviction motion. The State also fails to cite any precedent or support for this assertion. "When an appellant cites no authority and offers no explanation why precedent is unavailable, appellate courts consider the point waived or abandoned." *State v. Conaway*, 912 S.W.2d 92, 94 (Mo. App. S.D. 1995) (citing *Freeman v. State*, 765 S.W.2d 334, 335 (Mo. App. S.D. 1989)).

In *Brown*, our Supreme Court reaffirmed that Rule 29.07(d) "cannot be used to circumvent the time limitations set out in Rule 24.035(b) . . . ." *Brown v. State*, 66 S.W.3d at 723. Yet, the *Brown* court, at note 5, emphasized the continued importance of Rule 29.07(d) when brought *in the manner in which Hudson has utilized it*,[4] stating

---

[4] Further, although Hudson's point on appeal centers on the plea court's denial of his motion to withdraw his plea, a final judgment and sentence supports Hudson's appeal. *See Stevens v. State*, 208 S.W.3d at 894-95 ("Unless a defendant is sentenced, there is no final judgment to support an

7

[d]espite this holding, Rule 29.07(d) still plays an important role in this State's jurisprudence . . . . Rule 24.035 by its terms applies only to motions brought after conviction and sentencing and remand to the DOC. Therefore, claims that are brought prior to conviction, sentencing and remand to the DOC do not come within the claims enumerated in Rule 24.035 and so need not be raised in a Rule 24.035 motion . . . . For this reason, a motion under the first clause of Rule 29.07(d) to withdraw a plea of guilty before sentence is imposed or when imposition of a sentence is suspended would still be proper . . . .

*Id.* at 730, n.5; *see also State v. Onate*, 398 S.W.3d at 106 (citing *Stevens v. State*, 208 S.W.3d at 894-95); *see also State v. Fensom*, 69 S.W.3d 550, 551 (Mo. App. W.D. 2002)). Thus, Hudson's appeal of the pre-sentence denial of his Rule 29.07 motion to withdraw his plea is proper, as the appeal followed his conviction and sentencing. We proceed to the substantive issues presented by Hudson, rejecting the State's argument in this regard.

In his sole point on appeal, Hudson argues that the motion court clearly erred in denying his motion to withdraw his plea pursuant to Rule 29.07(d) because "his plea was not voluntarily and understandingly made due to the deficient performance of his . . . plea counsel, in violation of [his] due process rights . . ., in that [he] felt coerced to plead guilty because he did not understand the charges against him and because he believed his attorney was not prepared to defend him at trial . . . ." Correctly, he points us to Rule 24.02(e), which states that the guilty plea must not be entered by the court unless the court is satisfied there is a factual basis for the guilty plea. Indeed, "[a] factual basis for a guilty plea is necessary to ensure that the guilty

---

appeal of a denial of a Rule 29.07(d) motion."). Hence, Hudson "appeals from the judgment of the conviction, a matter over which this court has appellate jurisdiction." *Id.*

8

plea was intelligently and voluntarily entered, thereby satisfying due process requirements." *State v. Henry,* 88 S.W.3d 451, 457 (Mo. App. W.D. 2002) (citing *Parker v. State,* 608 S.W.2d 543, 545 (Mo. App. W.D. 1980)). "A factual basis exists if the defendant understands the facts recited by the court and expresses an awareness of the nature and elements of the charge." *Generaux v. State,* 448 S.W.3d 355, 358 (Mo. App. W.D. 2014). "The purpose of this rule is to ensure that 'a defendant understand[s] the specific charges against him, that he understand[s] the maximum penalty confronting him, and that he recognize[s] that he has waived specific legal rights by pleading guilty.'" *Benson v. State,* 511 S.W.3d 488, 490 (Mo. App. W.D. 2017) (quoting *Cafferty v. State,* 453 S.W.3d 791, 795 (Mo. App. W.D. 2014)).

Essentially, Hudson alleges two separate reasons for why his plea was entered involuntarily and without understanding: (1) he did not understand the charges against him and (2) he believed his plea counsel was unprepared to go to trial. In analyzing whether Hudson's plea was entered involuntarily and without understanding, we first address Hudson's contention that he did not understand the charges against him.

During the plea colloquy, the court walked through the essential elements of the crimes and Hudson confirmed the factual basis for the crimes charged. The trial court asked Hudson if he "had enough time to talk to [counsel] about [the] plea," to which Hudson responded "yes." The court then assured Hudson "[i]f you need more time, we can take that." Hudson again confirmed to the court that he had had enough time to speak with plea counsel concerning his case and his plea. Hudson never

9

indicated that he did not agree that all the essential elements of the crimes were met or that he disagreed with the facts as presented. After confirming the essential elements of the crimes, Hudson acknowledged that "there is a significant likelihood that at the end of the day, after all of the evidence was presented, there is a substantial likelihood a jury would find [him] guilty." Further, Hudson recognized "it's in [his] best interest to take this plea and avoid the exposure to greater sentence." Accordingly, the court correctly found that a factual basis had been provided, and that Hudson "does understand the charges and the consequences of this plea hearing."

In now arguing that he did not understand the charges against him, Hudson primarily relies on his own testimony at the 29.07(d) hearing that he neither reviewed discovery nor had "in-depth conversations at the jail" with plea counsel until just before the plea hearing. Yet, Hudson's self-serving testimony is directly refuted by his own prior testimony at the plea hearing as well as plea counsel's testimony during the 29.07(d) hearing. Importantly, the motion court was not required to believe Hudson's testimony during the 29.07(d) hearing over Hudson's testimony at the plea hearing. *See State v. Geist*, 583 S.W.3d 464, 471 (Mo. App. S.D. 2019) ("The trial court [considering a Rule 29.07(d) motion to withdraw a guilty plea] was free to credit Defendant's statements under oath when he entered his guilty pleas . . . and disbelieve Defendant's subsequent, self-serving statements . . . .").

10

Hudson's plea counsel testified that he believed he had sufficient time to discuss both the case and the plea offer with Hudson and that Hudson understood what was happening:

Q:    Do you feel you had sufficient time to discuss the [plea] offer with your client?

A:    I do.

Q:    Do you feel he understood the ramifications of that offer?

A:    I do.  He had – in fact, he was very much on board with the strategy . . . one of the reasons drugs are illegal for anyone, including him, was my impression that the reason he had not a specific recollection of the offense from that night was his own use of drugs.  It set up, I thought, a compelling argument for some leniency or, at least, an appropriate sentence with drug treatment for him.  And that's where we were.  He was on board with that approach.  So that's where we were when we did the plea, and then until he chose to seek to withdraw the plea.

Hudson's plea counsel testified that he and Hudson had discussions at-length regarding discovery, the strengths and weaknesses of the case, and their general strategy moving forward.  Plea counsel testified that he believed he had sufficient time to discuss the case with Hudson, including a discussion prior to Hudson entering his plea.  Plea counsel testified that he not only visited Hudson at the jail, but he stayed in communication with Hudson and Hudson's family in other ways.

Additionally, in asserting that he did not understandingly enter his plea, Hudson relies on his own out-of-context testimony at the plea hearing that he "kind of, sort of" understood the charges and evidence that had been filed in his case.  A full

11

reading of Hudson's testimony, rather than the mere snippet which he emphasizes, demonstrates Hudson's understanding of his case and his plea, to-wit:

Q:     Have you read the charges that were filed in this case against you?

A:     Yes.

Q:     Through the three years of this case, have you read the reports containing the evidence in this case?

A:     Yes.

Q:     And you've had an opportunity to talk to your attorney about that; correct?

A:     Yes.

Q:     Do you feel you fully understand the charges and the evidence that has been filed in this case?

A:     Yes. Well, kind of, sort of.

Q:     What do you mean kind of, sort of?

A:     I just didn't get a chance to research on my own.  I mean, I just know what I'm being told.

[HUDSON'S PLEA COUNSEL]:   He's referring to his limited access to a law library that was discussed earlier today when the Court denied the request for continuance.

BY THE COURT:

Okay but you've talked with your attorney about the charges and you have reviewed the evidence that was in this case?

A:     Yes.

12

Q:      I'm asking you this, even though you haven't had the access to the law library that you have wanted, even though you've had three years to have that access, knowing that are you wanting to plead guilty today?

A:      Yes.  It's just that if I had the access myself and I could do it myself I would.  The facility is the reason why I didn't get a chance to.  If I could just go in the law library and like do it on my own I could and I would, but every request I put in they didn't honor.

\* \* \* \* \* \* \*

Q:      But we are still ready to proceed with the guilty plea today; correct?

A:      Yes.

Hudson demonstrated at the plea hearing that he understood the charges against him and the plea agreement into which he was entering.  In stating that he "kind of, sort of" understood the charges against him, it is clear that such statement was not reflective of Hudson's understanding of the charges.  Rather, it is the venting of frustration that, although he had three years in which to research his charges in the jail's library, the day he chose to do so, just prior to the plea hearing, he could not gain library access.[5]  Accordingly, the trial court did not abuse its discretion or clearly err in finding that Hudson entered his plea knowingly and voluntarily because he understood the evidence and charges against him.

---

[5] The judge may have considered Hudson's failure to previously schedule time in the jail library nothing more than a tactic by Hudson to delay the proceedings.  And, a trial judge may consider other delaying tactics of a defendant in denying a pre-sentence 29.07(d) motion.  Here, for instance, Hudson obtained a trial continuance upon the granting of his request for a mental examination, yet refused to follow through with attending the examination and even refused transport from the jail for such purpose.  Unreasonable efforts to delay the proceedings may be considered by the judge in determining the merits of the Rule 29.07(d) motion, itself.

Second, we address Hudson's contention that his plea was entered involuntarily and without understanding because he believed plea counsel was unprepared to go to trial. In so arguing, Hudson asserts that plea counsel met with him in-person only three times; that plea counsel never had in-depth conversations with him regarding the discovery until just before the plea hearing; and that, although he deposed the female victim, plea counsel failed to depose the male victim.

Hudson again ignores that his contentions are contradicted by plea counsel's testimony as well as his own plea testimony. Despite plea counsel's limited in-person visits with Hudson, plea counsel testified that he stayed in communication with both Hudson and his family in other ways. Plea counsel testified that Hudson's family was an "involved, engaged family," and "[w]henever [Hudson's family] chose or desired a meeting, we would accommodate them." In addition, Hudson's plea counsel testified that he had discussed with Hudson the discovery the State had produced, possible defenses, and Hudson's constitutional rights, including his right to testify. To that extent, Hudson's plea counsel repeated his belief that he had sufficient time to discuss the case with Hudson:

Q: And during your meetings with Mr. Hudson, did you describe – did you go through all of the discovery that the state had produced?

A: That is normally what we would discuss. My questions like, well, do you understand that's what – you know, we've got DNA to deal with here. The victim is – she's willing to cooperate. She's going to appear for her deposition. Things like that.

Q: So you would discuss the strengths and weaknesses of the case?

A: Yes.

14

* * * * * *

Q:     When you are discussing the case with your client, did you feel you had sufficient time to go over all of the possible defenses, as well as discuss the strengths and weaknesses of the state's case?

A:     I do. I mean, it was pretty straightforward, actual case, I thought. You know, it really comes down to, as it often does, how strong is this witness.   To me, the most compelling element of the case was the credibility of the alleged victim after I met her, deposed her.  She was appropriately upset and, yet, she was very adamant.  And she would have been a devastating state's witness for my client.  I don't think they would believe him over her.

Likewise, by testifying that "the most compelling element of the case was the credibility of the alleged [female] victim," plea counsel acknowledged the grave impact that the female victim's testimony had on Hudson's case.  Although plea counsel did not depose the male victim, the female victim's deposition not only prepared trial counsel for trial, but also provided trial counsel substantial evidence with which to recommend a plea.  Furthermore, according to the State's factual basis given at the plea hearing, the male victim knew "that [female victim] was taken back to the car, but he indicates he was far enough away that he didn't hear exactly what was happening in the vehicle" and did not realize what had happened until after the two men fled.  Thus, in the event that plea counsel had deposed the male victim, the testimony elicited would have likely provided little value to Hudson's defense.

Further, the unwavering credibility of the victim must be compared to Hudson's own credibility, as well as the need to depose the other victim.  As his counsel stated, "one of the reasons drugs are illegal for anyone, including [Hudson],

15

was my impression that the reason he had not [sic] a specific recollection of the offense from that night was his own use of drugs." In other words, Hudson had little, if any, recollection of the crimes.

Moreover, trial counsel's focus on the victim who was deposed, rather than the other victim, is appropriate. The argument that Hudson was afraid trial counsel was not prepared for trial because he should have deposed the other victim, that is, the victim who was being held at gunpoint *face down on the sidewalk* some distance away, while the *deposed* victim was being sodomized, is not persuasive.

Hudson's overall claim that his plea was not voluntary because his counsel was not prepared for trial is also not unpersuasive. He has failed to satisfy his burden to prove by a preponderance of the evidence that his plea was entered unintelligently and involuntarily. Accordingly, the motion court did not clearly err or abuse its discretion in overruling Hudson's Rule 29.07(d) motion to withdraw his plea.

## Conclusion

The judgment of the circuit court is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

16