

# Missouri Court of Appeals

### Southern District

### Division One

STATE OF MISSOURI,                              )
                                                )
     Plaintiff-Respondent,                    )
                                                )
vs.                                             )     No. SD35412
                                                )
ROBERT EUGENE GEIST,                            )     **Filed: April 30, 2019**
                                                )
     Defendant-Appellant.                     )

### APPEAL FROM THE CIRCUIT COURT OF CRAWFORD COUNTY

Honorable Kelly W. Parker, Circuit Judge

**<u>AFFIRMED</u>**

Shortly before the State completed the presentation of its evidence to a jury, Robert Eugene Geist ("Defendant") chose to enter a plea of guilty to each of the four offenses for which he was being tried. Slightly more than four months later on the day of sentencing, Defendant's trial counsel orally requested to withdraw from representing Defendant. The trial court denied counsel's request, and Defendant then orally requested to withdraw his guilty pleas. The trial court denied that request as well, and, later that same day, imposed sentence on Defendant. Defendant appeals from the judgment contending in two points that the trial court erred in denying defense counsel's oral

1

request to withdraw, and in denying Defendant's oral request to withdraw his guilty pleas. We deny Defendant's points, and affirm the trial court's judgment.

**Facts and Procedural Background**

A trial to a jury commenced on December 7, 2016, on a second amended information. The prosecutor announced that he "anticipate[d]" calling three witnesses, and defense counsel stated, "It's hard to say at this point[,] sir[,] it just depends on what the, I don't anticipate my client testifying. I think we both knew that but I don't believe I have any other witnesses but it's hard to say at this point."

The trial court informed Defendant he was charged with (1) one count of the class B felony of possession of methamphetamine with the intent to distribute with a range of punishment from five to fifteen years in prison, and (2) three counts of the class C felony of unlawful possession of a firearm with a range of punishment for each count of up to seven years in prison (Defendant was alleged to have knowingly possessed three separate firearms – a shotgun, a pistol and an assault rifle). All the offenses were alleged to have occurred on February 18, 2016. Defendant entered a plea of not guilty to each count. Defendant also was informed that, if he was found to be a prior and persistent offender, the range of punishment would be increased to from "ten to thirty years or life imprisonment" on count one and "five to fifteen years" on each of counts two through four. Defendant acknowledged that he had received and rejected a plea offer, and "want[ed] to continue with the trial."

The prosecutor then introduced evidence of Defendant's alleged two prior felony convictions without objection by defense counsel, and the trial court found "beyond a reasonable doubt that the defendant is a prior and a persistent offender." Two law

2

enforcement officers then testified – a former detective for the Crawford County Sheriff's Department,[1] and "an investigator with the Lake Area Narcotics Enforcement Group assigned to Crawford County."

The former detective told the jury that he served a search warrant at Defendant's residence on February 18, 2016. Defendant was present at his residence during the search. In the course of the search, Defendant showed the officer a "cache" of "illegal drugs and drug paraphernalia," including "methamphetamine and weed," "two bags of crystalline sub[s]tance that tested positive for methamphetamine," "a bag containing marijuana," and "scales," in a "display case" in the garage, and a shotgun "that was next to that area." The officer also "went into the residence and located" a total of thirty-seven firearms. The firearms found included a second shotgun located in "a back gun safe" that the officer believed was open, a "Colt Gold Cup 1911 45 automatic handgun" seized from Defendant's residence, and an "AK 47 assault rifle" found in the residence along with a "drum magazine." Defendant told the officer he "knew" about the handgun, and that the "guns did belong to him." Defendant also told the officer that the second shotgun "was his." The second shotgun did not have a serial number as the shotgun had been "defaced." Defendant told the officer that Defendant "was the owner" of the assault rifle.

Following discovery of the firearms, the officer read Defendant his "*Miranda* rights" after which Defendant made a statement. The statement included Defendant telling the officer that "the guns were his," and "he knew he shouldn't have them but he wanted to pass them on to his son." In a later interview at the Sheriff's Department,

---

[1] At the time of trial, the former detective had recently taken a job as Chief of Police for Bourbon, Missouri.

Defendant also told the officer "he purchased some of the weapons," "some of the weapons were very expensive," and "he traded [dope] sometimes for guns that he believed were probably stolen." Defendant also told the officer that "he sold meth to a[n] unidentified person in the prior six months."

At the time of the search, Defendant's wife told the officer that "some of the weapons in the safe did belong to her," but she was unable to describe the weapons and "then conceded that the weapons belonged to Defendant."

The investigator testified as follows. From Defendant's garage, the investigator collected

> [four] small bags with a crystalline substance which field tested positive for the presence of methamphetamine and was later sent to the lab and came back as methamphetamine. And then items of drug paraphernalia . . . There was numerous bags which I associate to the packing of illegal substances for distribution as well as scales with residue which field tested positive for meth.

The "numerous bags" were "too many to count." The investigator showed the jury the "numerous bags" and the "small bags" he collected. The investigator also collected "some larger bags" with residue. In the investigator's experience, "[l]arger bags are an indication of large quantities of drugs being kept in those bags," and the presence of smaller bags indicates "smaller quantities being broke down from the larger quantities for distribution." The significance of the scales was "to verify the weight of various amounts, smaller amounts."

The investigator also collected a bag of marijuana. In a post-*Miranda* interview that was recorded, Defendant told the investigator the drugs seized were "just his personal use" and "he hadn't done larger quantities in quite a while." However, Defendant also told the investigator that an unnamed "friend" still "owed him money for

4

drugs." Based on the evidence, the investigator opined that Defendant's operation "was still involved in the distribution of methamphetamine," and "the amount [Defendant] had" "is more than what we normally see on a personal use case." On cross, the investigator acknowledged the amount "could go either way" – "either a personal use amount or a distribution amount."

Following the completion of the investigator's testimony, the prosecutor announced that the State had "one more witness" – "the lab technician." Defense counsel then asked "if we could take a recess," and the trial court granted "a short break." Before the jury was brought back into the courtroom, an exchange between counsel, Defendant and the trial court occurred where Defendant plead guilty to each of the four offenses being tried. *See* Appendix A (attached).

The trial court accepted the guilty pleas after taking judicial notice of all the evidence and asking Defendant if he agreed that is what the evidence was. The trial court found that Defendant's pleas of guilty were made freely, voluntarily and intelligently, with full understanding of the charges and consequences of the pleas and with full understanding of his rights attending a jury trial, and the effect of the pleas of guilty on those rights. The trial court also found that there was a factual basis for the pleas. The trial court then ordered the Board of Probation and Parole to prepare a sentencing assessment report, and scheduled sentencing for February 27, 2017. The trial court released the parties, and subsequently discharged the jury.

Following at least two continuances of sentencing, Defendant appeared for sentencing on April 19, 2017. At the outset of the hearing, defense counsel orally[2]

---

[2] Defense counsel told the trial court that she had not filed a request for leave to withdraw – Defendant "informed me yesterday."

announced to the trial court that Defendant "has directed me to withdraw as counsel and he wishes to seek alternate counsel. He feels that I unduly pressured him to plead guilty in this case so he will also be seeking to withdraw his guilty plea. I know that you will not allow me to withdraw until alternate counsel has entered." The prosecutor "oppose[d] the request unless he has another counsel that's going to enter for him today," and also argued that Defendant "had ample time to get another attorney if he wanted one." The trial court then stated "[o]kay the request to withdraw is denied at this time because this matter has been going on way too long."

Defense counsel then orally informed the trial court that Defendant "wishes to withdraw his guilty plea, that's our second request Your Honor." The following discussion between the trial court, counsel, and Defendant then occurred:

> [Defense Counsel]: He does not believe he's guilty of this offense and he believes I unduly influenced him into pleading guilty. He was unhappy during my performance during trial and he believes that's one of the reasons that he pled guilty and that unduly influenced him.

> The Court: Okay. Do you wish to be heard further on that?

> [Defense Counsel]: [Defendant] probably does Your Honor. I think I've laid out the . . .

> Defendant: That's pretty much everything.

> The Court: Okay[, Defendant,] do you wish to be heard further on that, do you join in your attorney's request to withdraw your guilty plea?

> Defendant: Yes I do.

> The Court: Anything else?

> Defendant: I pled guilty to something I'm not guilty of. It was just a highly pressured time and I didn't have no choice and the longer I think about it the worse I get.

> The Court: Okay[,] State wish to be heard?

6

[Prosecutor]: Yes[,] Your Honor. We are opposed to that request[.]

The Court: Okay the request to withdraw guilty plea is overruled and denied[.]

Later that same day after a recess, the trial court recalled the case for sentencing. At the sentencing, Defendant took the witness stand and testified about a number of topics including that Defendant disagreed with "pretty much" the entire statement of facts in the sentencing assessment report. Defendant also testified that he felt defense counsel's "assistance was ineffective" because:

I can't get a phone call usually, late for court, this, that and the other. I don't know how to say, she's not open with me I guess is what I want to say. I mean I like to know everything ahead of time before I get caught up in the middle of something and it's just my nature and she's not met my expectations.

Defendant requested probation.

Defendant's wife also testified, and told the trial court,

[The] guns were mine. I was the only one who had the combination to the safe and I was the one who gave them that combination to the safe when they asked for it. They belong to me, not anybody else. They were forfeited over to me whenever my husband got in trouble years ago. He hasn't touched a gun. He knows better. I kept them locked in a safe for a reason[.]

In line with the prosecutor's agreement at the time of Defendant's guilty pleas, the prosecutor recommended fifteen years on Count I and ten years on each of Counts II through IV with the sentences to run concurrently. The trial court imposed a sentence of fifteen years on possession of methamphetamine with the intent to distribute (Count I), and a sentence of ten years on each of the three counts of unlawful possession of a firearm (Counts II through IV), with the sentences to run concurrently.

7

During the trial court's questioning of Defendant in making its determination of whether there was probable cause to believe defense counsel was ineffective, Defendant told the trial court: "It was just that day of the trial, we went to lunch and when we come back it was like the whole room, a whole new ball game, I mean everybody did a 180, she was doing great and then all of a sudden poof, you need to plea. I was feeling like I didn't know what to do." The State had not made a new offer; "I just don't know what it was, I still don't know." Defense counsel did not "do something that [Defendant] requested her not to do." When asked if defense counsel "fail[ed] to do something that [Defendant] requested her to do," Defendant replied:

> Other than return phone calls and be here when she was supposed to be you know I just, I was not informed real fully of everything that I could have done. I could have had a change of venue or something, none of that was ever explained. I had two choices that day of the trial.
>
> The Court: I think I asked you when we took your guilty plea whether you understood you have a right to a change of venue.
>
> Defendant: Yeah and I was probably in a mode, you know my wife was upset and I couldn't get them to cooperate you know I had two choices so I took the best of the two that I thought was the best but apparently it wasn't.

Defense counsel did not respond to Defendant's complaints about her performance. The trial court subsequently found that "there is no probable cause of ineffective assistance of counsel."

**Analysis**

In his first point, Defendant asserts that the trial court erred in denying defense counsel's oral request to withdraw, "or in the alternative, by failing to grant [Defendant] a continuance," "in that an irreconcilable conflict existed between [Defendant] and [defense] counsel, where [defense] counsel was required to argue a motion that was

8

predicated on [defense] counsel's own alleged impropriety, and the denial was an abuse of discretion."

Rule 84.04(e)[3] requires that the argument portion of the brief "include a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved; and the applicable standard of review." Defendant's first point fails to comply with this requirement. At sentencing, defense counsel's stated ground for her request to withdraw was that Defendant "feels [she] unduly pressured him to plead guilty." Neither defense counsel nor Defendant claimed that defense counsel had an irreconcilable conflict with Defendant at the time of sentencing, or requested a continuance from the sentencing. Defendant's first point was not presented to the trial court. Defendant does not request plain error review, and, in the absence of a request, we decline to exercise our discretion to review for plain error.

Defendant's first point is denied.[4]

In his second point, Defendant asserts that the trial court erred in denying Defendant's oral request to withdraw his guilty pleas on the day of sentencing "in that the full record available to the trial court established that [Defendant's] plea of guilty was the

---

[3] All references to rules are to Missouri Court Rules (2018).

[4] We have attached in the appendix the colloquy between the trial court and Defendant at the time of the guilty pleas. We commend the trial court for a thorough examination of Defendant at the time of the pleas. At the hearing, the trial court explored Defendant's understanding of the offenses to which he was pleading guilty, the range of punishment for those offenses, the evidence supporting Defendant's guilt, the rights Defendant would be giving up if he pled guilty, whether Defendant's guilty pleas were voluntary, and Defendant's satisfaction with defense counsel.

Defendant replied to the trial court that (1) he "wish[ed]" to enter a guilty plea to each of the four counts he was facing; (2) he had had enough time to visit with defense counsel; (3) he understood the rights he would be giving up; (4) no "threats or promises" were made to induce him to plead guilty; (5) he understood the range of punishment for the offenses; (6) he was pleading guilty because he was in fact guilty and admitted he committed the offenses charged; (7), in his own words, he "[s]old methamphetamines, possessed, owned guns I shouldn't have;" (8) he was "satisfied with the services of" defense counsel; and (9) he agreed that the evidence he had heard during the trial was "what the evidence is."

product of misapprehension, fear, and undue influence, and/or that the trial court wrongfully believed that a motion for post-conviction relief was a substitute for the pre-sentence motion to withdraw plea and the denial was an abuse of discretion."[5]

Rule 29.07(d) provides: "A motion to withdraw a plea of guilty may be made only before sentence is imposed or when imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

For Rule 29.07(d) motions filed before sentencing:

> A trial court has discretion to grant or deny a motion to withdraw a guilty plea prior to sentencing. *State v. Johnson*, 529 S.W.3d 36, 42 n.5 (Mo. App. W.D. 2017). Prior to sentencing, the withdrawal of a guilty plea is freely allowed. *Id*. This court's review of the denial of a motion to withdraw a guilty plea is whether the trial court's decision to deny the motion was clearly erroneous. *State v. Vogt*, 304 S.W.3d 209 (Mo. App. W.D. 2009).
>
> > We are governed in this proceeding to withdraw the guilty plea by certain well recognized principles: (1) on appeal from a denial of a motion to withdraw a guilty plea our review is limited to a determination of whether the ruling of the trial court was clearly erroneous, *Young v. State*, 438 S.W.2d 280, 283 (Mo. 1969), *State v. Davis*, 438 S.W.2d 232, 234 (Mo. 1969), or there was an abuse of discretion; (2) the burden is on the movant to prove by a preponderance of evidence that the court erred in overruling the motion to withdraw the plea of guilty, *cf. Beach v. State*, 488 S.W.2d 652, 656 (Mo. 1972); (3) a movant does not have an absolute right to withdraw his plea of guilty whether before or after sentence, *State v. Jackson*, 514 S.W.2d 638, 641 (Mo. App. 1974), and may do so only in extraordinary circumstances, *Mooney v. State*, 433 S.W.2d 542, 544 (Mo. 1968); and (4) if there is evidence that the defendant was misled or induced to plead

---

[5] Contrary to the State's assertion, we have the authority to consider in this appeal from Defendant's final judgment in his criminal case the trial court's denial before sentencing of Defendant's oral request to withdraw his guilty pleas pursuant to Rule 29.07(d). **State v. Knox**, 553 S.W.3d at 392-93; *see also* **State v. McAfee**, 462 S.W.3d 818, 822, 820-21 (Mo.App. E.D. 2015) (final judgment supports appeal of pre-sentence motion to withdraw guilty plea).

> guilty because of fraud, mistake, misapprehension, fear, persuasion or holding out of hopes which prove to be false or ill-founded, he should be permitted to withdraw his plea since the law favors a trial on the merits, *State v. Rose*, 440 S.W.2d 441, 443 (Mo. 1969).

*State v. Nielsen*, 547 S.W.2d 153, 158 (Mo. App. 1977) (internal footnote omitted); *State v. England*, 599 S.W.2d 942 (Mo. App. S.D. 1980).

**State v. Knox**, 553 S.W.3d 386, 393-94 & n.5 (Mo.App. W.D. 2018) (footnote omitted).

Defendant did not present to the trial court his alternative claim that "the trial court wrongfully believed that a motion for post-conviction relief was a substitute for the pre-sentence motion to withdraw plea." Defendant does not request plain error review of his alternative claim, and, in the absence of a request, we decline to exercise our discretion to review for plain error. As a result, we do not consider Defendant's alternative claim further.[6]

As to the claims that Defendant "does not believe" he is guilty of the offenses to which he plead guilty, and was "unhappy" with defense counsel's performance at trial, and that defense counsel "unduly influenced him into pleading guilty," each is clearly refuted by Defendant's own statements under oath when he entered his guilty pleas. The trial court had the benefit of personally observing defense counsel's performance during trial, examining Defendant under oath when he entered his guilty pleas after aborting his jury trial shortly before the State completed its evidence, and listening to counsel and Defendant at the time Defendant requested to withdraw his guilty pleas on the day of sentencing. As we noted in footnote 4, the trial court conducted an extensive

---

[6] We also note that Defendant does not refer us to any statement by the trial court that indicates the trial court was basing its denial of Defendant's oral request to withdraw his guilty pleas in any part on a ground that Defendant's request could only be raised in a post-conviction proceeding. And, a reference by the prosecutor to the fact that Defendant "has other remedies" did not imply that the prosecutor believed the "other remedies" were Defendant's only remedies.

11

conversation with Defendant.  The trial court was free to credit Defendant's statements under oath when he entered his guilty pleas after hearing much of the evidence against him, and disbelieve Defendant's subsequent, self-serving statements on the day of sentencing.  The trial court's denial of Defendant's oral request to withdraw his guilty pleas was not clearly erroneous.  Defendant's second point is denied.

The trial court's judgment is affirmed.

Nancy Steffen Rahmeyer, J. – Opinion Author

Don E. Burrell, P.J. – Concurs

Gary W. Lynch, J. – Concurs

**Appendix A**

The Court:  Sir, your attorney . . . at the break indicated to me that you decided and wished to withdraw your previous pleas of not guilty, is this as to all counts?

[Prosecutor]:  Yes.

[Defense Counsel]:  Yes.

[Prosecutor]:  My intention was a plea on all counts with the cap I discussed with [defense counsel].

The Court:  Okay.  That you wish to withdraw your not guilty plea as to all of the counts against you and to enter a guilty plea as to all of the counts, is that what you wish to do?

Defendant:  Yes.

The Court:  Have you had enough time to visit with your attorney about these cases?

Defendant:  Yes.

[Defendant stated he was "fifty-five, six," had completed twelve grades of school, and reads and writes English.]

The Court:  Sir[,] how do you plead to the class B felony of possession of a controlled substance with the intent to distribute in Count I?

Defendant:  Guilty.

The Court:  How do you plead to the class C felony of unlawful possession of a firearm in Count II?

Defendant:  Guilty.

The Court:  How do you plead to the class C felony of unlawful possession of a firearm in Count III?

Defendant:  Guilty.

The Court:  How do you plead to the class C felony of unlawful possession of a firearm in Count IV?

Defendant:  Guilty.

The Court:  Raise your right hand.  [Defendant was placed under oath]

The Court:  Sir[,] now that you've been placed under oath if I were to ask you the same questions I asked before you were placed under oath, would your answers be the same?

Defendant:  Yes[,] sir.

The Court:  Are you under the influence of alcohol, narcotics or any kind of medication today?

Defendant:  No[,] sir.

The Court:  Do you understand you have a right to have a jury determine your guilt or innocence at a speedy and public trial and in fact half of this day we've been having your jury trial, is that correct?

Defendant:  Yes[,] sir.

The Court:  Okay and the jury is out of the courtroom?

Defendant:  Absolutely.

The Court:  Okay.  Do you understand by pleading guilty we're stopping this jury trial and you will not have a jury trial concluded?

Defendant:  Yes[,] sir[,] I understand that.

The Court:  Do you understand that if we concluded this jury trial and the jury found you guilty you would have a right to appeal that finding to a higher court?

Defendant:  Yes[,] Your Honor.

The Court:  Do you understand at a trial of the charges, at this jury trial that we're currently in, you would have a right to be confronted by those who would testify concerning your participation in the offenses charged, hear that testimony and be allowed to ask those witnesses questions on cross examination, as your attorney has been doing throughout the trial?

Defendant:  Yes[,] Your Honor[,] I understand.

The Court:  Do you understand that by pleading guilty you waive all those rights and will not be confronted by the additional witnesses against you, won't hear the additional evidence and your attorney won't be able to cross examine the additional witnesses against you?

14

Defendant: Yes[,] Your [H]onor[,] I understand.

The Court: Do you understand you have a right not to say anything which might incriminate you with regard to these charges?

Defendant: Yes I do.

The Court: Do you further understand that by pleading guilty you are making incriminating statements with regard to these charges and the presumption that you are innocent and the requirement that a jury be convinced of your guilt beyond a reasonable doubt are lost to you?

Defendant: Yes[,] sir[,] I do.

The Court: Do you understand that you have a right to testify at your trial if you wanted to but you could not be forced to do so and if you chose to remain silent no one could comment upon your silence and no adverse inference could be drawn therefrom?

Defendant: Yes[,] sir.

The Court: At one point in time you understand that you did have a right to request a change of venue but you chose not to exercise that right, is that true?

Defendant: Yes I do.

The Court: And at one point in time you had a right to request a change of judge and have a different judge take your guilty plea and sentence you or preside over your jury trial, but you chose not to exercise that right, is that true?

Defendant: Correct.

The Court: Do you understand that by pleading guilty you waive your right to a jury trial and a jury verdict and admit the essential elements of the charges against you?

Defendant: Yes I do.

The Court: Have any threats or promises been made to you to induce you to enter your pleas of guilty?

Defendant: No.

The Court: Has anyone made any promise about the sentences you are to receive?

Defendant: No.

15

The Court:  Do you understand that no one can promise you what your sentences will be and any such promise is not binding upon the Court and the Court can impose any sentence within the range of punishment permitted by law?

Defendant:  Yes[,] sir.

The Court:  Sir[,] what is the range of punishment on a class B felony?  Well I should say . . .

[Defense Counsel]:  Judge[,] if I may can I ask him?

The Court:  You may.

[Defense Counsel]:  You understand that this was a class B felony but you are a prior and persistent felony offender?

Defendant:  Yes I do.

[Defense Counsel]:  So the bottom range of punishment you understand would be that for a class B felony at five years but the top range would be thirty years of [sic] life in prison?

Defendant:  Yes.

The Court:  And how about a class C felony as a prior and persistent offender?

Defendant:  Not to exceed fifteen years I do believe.

The Court:  Okay are you pleading guilty because you are in fact guilty and admit you committed the offenses charged?

Defendant:  Yes.

The Court:  Tell me in your own word [sic] what you did in these three cases?

Defendant:  Sold methamphetamines, possessed, owned guns I shouldn't have.

The Court:  The prosecutor says that on or about February 18, 2016, . . . you with the intent to distribute, possessed methamphetamine . . . knowing of its presence and nature.  Is that what you did?

Defendant:  Yes[,] sir.

The Court:  He also alleges that on or about February 18, 2016, . . . you knowingly possessed a . . . shotgun, a . . . pistol, . . . and a . . . rifle . . . .  Is that what you did in each of these cases?

16

Defendant: Yes[,] sir.

The Court: Sir, are you satisfied with the services of your attorney?

Defendant: Yes[,] sir.

The Court: [Defense counsel], have you discussed all of the defendant's rights in the defense of these cases with him?

[Defense Counsel]: Yes[,] sir.

The Court: Have you discussed with him the evidence he has provided you and evidence which you have been able to obtain from the prosecutor and other sources?

[Defense Counsel]: Yes[,] sir.

The Court: Do you believe the prosecutor has provided you with all the evidence or leads to all the evidence he has?

[Defense Counsel]: As of today when we found out about the new report, I don't believe the prosecutor had that, once he found out about it he did arrange for me to receive a copy, so yes.

. . . .

The Court: Okay. Do you have any reason to believe the defendant is suffering from any mental illness, disease, defects or delusions of any kind?

[Defense Counsel]: No[,] sir.

The Court: Do you know of any reason why the Court should not accept the defendant's pleas of guilty?

[Defense Counsel]: No[,] sir.

The Court: I understand that the only agreement between the State and the defense is that the State will recommend a cap of fifteen years?

[Prosecutor]: That's correct[,] Your Honor.

[Defense Counsel]: Yes[,] sir.

The Court: Is that what you expected him to recommend?

Defendant: Yes[,] sir.

[In response to the trial court's question, defense counsel indicated she intended to request a sentencing assessment report.]

The Court: What would the state's evidence be at trial? I think I . . .

[Prosecutor]: Court has heard all of it except for the lab technician who was going to testify next who would testify that the substance was methamphetamine.

The Court: Okay the Court takes judicial notice of the evidence presented at the trial to this jury so far and the opening statement of the prosecutor. Sir[,] do you understand that you've already heard what the evidence would be[?] Do you agree that's what the evidence is?

Defendant: Yes[,] sir.