STATE of Missouri, Respondent,

v.

Andrew BERNHARDT, Appellant.

No. ED 95044.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 1, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 12, 2011.

Kenneth A. Leeds, St. Louis, MO, for appellant.

Chris Koster, Atty. Gen., John M. Reeves, Jefferson City, MO, for respondent.

*OPINION*

CLIFFORD H. AHRENS, Judge.

Defendant Andrew Bernhardt appeals from the trial court's judgment and sentence entered upon a jury conviction of aggravated stalking and armed criminal action. We affirm.

## Background

Defendant was a patient of Dr. Paul Packman for a short time in late 2001 to early 2002. Dr. Packman and Defendant's father, Roger Bernhardt, are cousins. Mr. Bernhardt is a lawyer and occasionally provided legal services to Dr. Packman. Defendant was extremely dissatisfied with Dr. Packman's treatment and told his father that he wanted to sue Dr. Packman for medical malpractice, get his medical license revoked, "get his house," and "just finish him off." Mr. Bernhardt informed Dr. Packman of Defendant's hostility but did not repeat his rantings specifically. For the next several years, Dr. Packman did not see or hear from Appellant other than a chance sighting in a restaurant.

Then in 2009, at 3 a.m. on June 21, Defendant went to Dr. Packman's residence in possession of a loaded firearm. His apprehension unfolded as follows. The streetscape in front of the Packman residence was illuminated by a streetlamp and by a spotlight shining from the upper exterior of the house. The distance between the house and the street is approximately 20 to 25 feet. Dr. Packman's adult son, David, occupied an upstairs bedroom with a window facing the street. David heard a car pull up in front of the house, on the far side of the street, and shift between reverse and drive several times as if to parallel park. David looked out the window and saw a black Infiniti driven by a white male wearing a baseball cap. The driver remained in the vehicle and, after a minute or two, drove away. About two

minutes later, the Infiniti pulled up and parallel parked a second time, and David called the neighborhood security service. About five minutes passed during which the driver remained in the car; then he drove away again before the security service arrived. Ten minutes later, the Infiniti appeared a third time. The driver stopped the car in the middle of the street and turned the interior light on, and David thought he saw the driver loading a gun. David again called the security service, and a patrol car arrived and attempted to pull over the Infiniti, but it sped away. About 90 minutes later, David heard and saw the Infiniti pull up yet again, at which time the driver stepped in and out of the car three or four times carrying what David believed to be a handgun. The driver never stepped onto the Packman's property and eventually left again. Meanwhile David called the police, and an officer stopped Defendant in the Infiniti a few blocks away. Upon inquiry and with Defendant's consent, the officer opened the trunk and seized a gun case containing a loaded handgun. Defendant was arrested for trespassing. During police questioning, Defendant indicated that he was thinking about going up to the house but decided not to given the hour. Dr. Packman was informed of the night's events when he woke the next morning.

The State charged Defendant with aggravated stalking and armed criminal action. On the stalking count, the information in lieu of indictment alleged that Defendant (1) harassed Dr. Packman by appearing at his house on multiple occasions in possession of a firearm and (2) communicated a credible threat by displaying a weapon with the intent of placing Dr. Packman in fear for his safety.

At the close of the evidence, Defendant moved for judgment of acquittal, arguing that the record was void of any evidence suggesting that Defendant communicated a credible threat as required by section 565.225.1(2) RSMo 2009. The trial court denied that motion and submitted the case to the jury. During deliberations, the jury asked the court whether Instruction 5 required that the communication of a credible threat be *directly* received by Dr. Packman. The court responded that the jury must be guided by the evidence, reasonable inferences therefrom, and the instruction. The jury found Defendant guilty, and the trial court sentenced Defendant to concurrent prison terms of five years for aggravated stalking and four years for armed criminal action. Defendant appeals, asserting, in sum, that the evidence was insufficient to support the convictions (points I and III) and that the stalking statute is unconstitutional due to the vagueness of the word "communicate" (point II).

## Discussion

We address Defendant's second point first, for if the stalking statute is unconstitutional then we do not have jurisdiction.

*Constitutionality*

Defendant contends that section 565.225 is unconstitutionally vague. As a preliminary matter, the Missouri Supreme Court has exclusive jurisdiction in cases involving the validity of a statute. Mo. Const. art V, § 3. However, a party's mere assertion of unconstitutionality does not deprive this Court of jurisdiction. *Ahern v. P & H, LLC,* 254 S.W.3d 129, 134 (Mo. App.2008). When a party's claim is not real and substantial but merely colorable, our review is proper. *Id.* As discussed below, we find Defendant's constitutional challenge without merit. Therefore, our jurisdiction lies. *Id.* Our review is *de novo. Hodges v. City of St. Louis,* 217 S.W.3d 278, 279 (Mo.2007).

■ The void for vagueness doctrine ensures that laws give fair and adequate notice of proscribed conduct and protects against arbitrary and discriminatory enforcement. *State ex rel. Nixon v. Peterson*, 253 S.W.3d 77, 81 (Mo.2008). The test is whether the language conveys to a person of ordinary intelligence a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. *Id.* The language is to be evaluated by applying it to the facts at hand. *Id.*

Section 565.225 provides in relevant part as follows:

A person commits the crime of aggravated stalking if he or she purposely, through his or her course of conduct, harasses or follows with the intent of harassing another person and (1) makes a credible threat. § 565.225.3.

"Harass" means to engage in a course of conduct directed at a specific person that serves no legitimate purpose [and] that would cause a reasonable person under the circumstances to be frightened, intimidated, or emotionally distressed. § 565.225.1(3).

"Course of conduct" means a pattern of conduct composed of two or more acts, which may include communication by any means, over a period of time, however short, evidencing a continuity of purpose. § 565.225.1(1).

A "credible threat" is a threat communicated with the intent to cause the person who is the target of the threat to reasonably fear for his or her safety, or the safety of his or her family, or household members. § 565.225.1(2).

■ Defendant asserts that the foregoing statute is vague in that the word "communicate" is not defined and therefore he was not adequately warned that his conduct was proscribed. Though "communicate" is not defined in the statute, "it is generally presumed that the legislature intended that every word, clause, sentence, and provision of a statute have effect." *State v. Porter*, 241 S.W.3d 385, 391 (Mo. App.2007). "The primary rule of statutory construction is to ascertain the intent of the lawmakers by construing words used in the statute in their plain and ordinary meaning." *Id.* Dictionaries illuminate the plain and ordinary meaning of "communicate" as follows. "To pass along, impart, transmit. To make known. To give or exchange information, signals, or messages in any way, as by talk, gestures, or writing." Webster's New World College Dictionary 295 (4th ed.2001). "To bestow, convey, make known, recount, impart; to give by way of information; to talk over; to transmit information." Black's Law Dictionary 279 (6th ed.1991). A person of ordinary intelligence would understand these words and be familiar with their use. *Peterson*, 253 S.W.3d at 81. "If the terms or words used in the statute are of common usage and are understandable by persons of ordinary intelligence, they satisfy the constitutional requirements as to definiteness and certainty." *State v. Brown*, 660 S.W.2d 694, 697 (Mo.1983). The term "communicate," as commonly understood, conveys with sufficient definiteness what conduct is prohibited by law and is not so vague and indefinite as to render the statute void for vagueness. Point denied.

Finding the stalking statute constitutional, we now return to Defendant's first point as to whether there was sufficient evidence of the proscribed conduct.

*Sufficiency of the evidence of aggravated stalking*

■ Defendant asserts that the trial court erred in denying his motion for judgment of acquittal because there was no evidence that Defendant communicated a credible threat as required by the statute

defining aggravated stalking. On a challenge to the sufficiency of the evidence, appellate review is limited to determining whether there was sufficient evidence from which a reasonable fact-finder could have found Defendant guilty beyond a reasonable doubt. *State v. Capraro,* 291 S.W.3d 364, 366 (Mo.App.2009). We do not weigh evidence, determine witness credibility, or act as a "super juror" with veto power. *Id.* Rather, we give great deference to the trier of fact, accepting as true the evidence and reasonable inferences favorable to the verdicts and disregarding those that are unfavorable. *Id.* However, to the extent that a challenge to the sufficiency of the evidence depends on statutory interpretation, our review is *de novo. Porter,* 241 S.W.3d at 390.

Here, the facts relating to Defendant's conduct are undisputed. Rather, the central inquiry is whether that conduct satisfies the statutory elements comprising aggravated stalking as a matter of law. Our review, therefore, is *de novo.* Within the statutory framework set forth *supra,* specifically the parties dispute whether Defendant's actions constitute communication.

Defendant contends that nothing about his movements on the night in question permits the inference that he intended to "communicate" a threat to Dr. Packman as that term is defined in the dictionaries cited above. On the contrary, he argues, the timing and duration of his appearances suggest a desire to remain undetected. Defendant made a conscious decision not to disturb the residents of the Packman house, never stepped onto their private property, but instead remained in the street at least 25 feet away. Further, Defendant did not point or "display" his gun in a communicative manner—unaware of his audience—but merely held it in his hand. Lastly, Defendant emphasizes the absence of Missouri precedent upholding a stalking conviction on similar facts, noting that, in the existing case law, the defendants communicated deliberately and directly to their targets, who were therefore well aware of the threat prior to the defendants' arrest. *State v. Cartwright,* 17 S.W.3d 149 (Mo.App.2000) (defendant told victim that he was going to break her neck and throw her down stairs); *State v. Granger,* 966 S.W.2d 27 (Mo.App.1998) (defendant went to victim's door and yelled "I'm going to get you!" and "You won't make it to court!"); *State v. Lasley,* 130 S.W.3d 15 (Mo.App.2004) (defendant left profane, hostile, sexually explicit messages on victim's answering machine).

The State counters that Defendant's repeated apparitions in the middle of the night—illuminated by street and spot lights and the interior light of his vehicle, returning even after evading security—combined with his unconcealed possession of a handgun, all viewed as a whole, adequately support the inference that Defendant intended to be seen by and perceived as a credible threat to a member of the Packman household. The State further submits that *State v. Lasley,* which Defendant attempts to distinguish, actually supports the State's position that a stalker may communicate his threat indirectly—*i.e.,* via answering machine in *Lasley* and via David here.

Indeed, Missouri law recognizes that a threat may be delivered via intermediary. *Alexander v. State,* 864 S.W.2d 354, 357 (Mo.App.1993). We reject Defendant's suggestion that a threat must be received by its intended recipient before it can be deemed communicated. It is sufficient that the threat reach the intermediary, whether a person, electronic device, or the postal service. And here the record contains sufficient evidence to support the jury's inference that the threat was a credible one, *i.e.,* intended to cause fear. Further, using the aforementioned dictionary

definitions of communicate, we find Defendant's conduct sufficiently communicative to satisfy the statute. Specifically, by shifting and parking several times in front of the house in the middle of the night, illuminating his dome light, loading his gun and stepping out of the car with it, under a spotlight and 25 feet from the front door, Defendant successfully made himself and his weapon known to David. Based upon our interpretation of the statute, the evidence in the record supports the jury's conviction. Point denied.

*Sufficiency of the evidence of armed criminal action*

 Finally, Defendant submits that the trial court erred in denying his motion for judgment of acquittal on the charge of armed criminal action because there was no evidence that Defendant committed the predicate crime with the use or aid of his handgun. More specifically, Defendant suggests that, without evidence that he pointed or displayed the gun in a threatening manner, his mere possession of it was insufficient.

We find Defendant's argument wholly unpersuasive. Defendant's actions involving the deadly weapon—loading his handgun and stepping out of his car in front of the Packman residence—comprised precisely the credible threat causing David to fear for his safety and that of other household members. In short, the gun was the threat. Therefore, Defendant necessarily committed aggravated stalking through the use of a deadly weapon. Point denied.

### Conclusion

The trial court's judgment is affirmed.

SHERRI B. SULLIVAN, P.J. and LAWRENCE E. MOONEY, J., concur.