

# In the Missouri Court of Appeals
# Eastern District

### DIVISION III

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100873 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Elizabeth Byrne Hogan |
| JAMES RAYBURN, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 12, 2014 |

Introduction

Appellant James Rayburn ("Rayburn") appeals from the judgment of the trial court

convicting him of attempted forcible sodomy, Section 566.060.[1]  Following a bench trial, the

trial court sentenced Rayburn to seven years in prison.  Rayburn now challenges the sufficiency

of the evidence to support his conviction, alleging that there is no evidence that he took a

substantial step toward completion of the offense.  Rayburn contends the evidence shows that he

withdrew from his plan to commit forcible sodomy on Victim, which demonstrates his lack of

intent to act on his threat and complete the offense of forcible sodomy.  Because evidence of

Rayburn's conduct, which included removing his penis from his pants and threatening to kill the

victim if she did not perform oral sex on him, demonstrates a substantial step toward completion

---

[1] All statutory references are to RSMo (2000).

of the offense of forcible sodomy, and because Rayburn did not voluntarily withdraw from his conduct against Victim, we find no error and affirm the judgment of the trial court.

Factual and Procedural Background

Viewed in the light most favorable to the verdict, the following facts were adduced at trial: On the evening of March 12, 2012, Victim was walking to a gas station near her home on Dr. Martin Luther King Boulevard. Rayburn had been drinking with his friends earlier that evening and had decided to hire a prostitute. When Rayburn saw Victim walking on the street, he assumed she was a prostitute and approached her. Victim got into Rayburn's car, and Rayburn began driving around and asking Victim personal questions. Victim became afraid of Rayburn so she answered his questions but gave false information. Rayburn then stopped the car at a park and told Victim "bitch, do what I say or else I am going to kill you." Rayburn then removed his penis from his pants. When Rayburn exposed his penis, Victim feigned an asthma attack, gasping for breath and banging on the dashboard of the car. Rayburn asked Victim what was going on, and when Victim did not answer, he drove to a Walgreens pharmacy to get water. When they arrived at Walgreens, Rayburn got out of his car. As Rayburn exited his car, Victim pulled a knife out of her purse and threatened Rayburn with it. Victim then ran to a woman in the parking lot and screamed for her to call the police. At that point Rayburn jumped back into his car and drove away.

Victim gave the police Rayburn's license plate number. After the police found that the car was registered to Rayburn, they placed his photograph in a photo lineup for Victim to review. Victim identified Rayburn from the photo lineup, and Rayburn was subsequently arrested. Rayburn waived his Miranda rights and gave a statement to the police in which he admitted that he formed the intent to beat Victim until she gave him oral sex.

2

The State of Missouri ("State") charged Rayburn with one count of kidnapping and one count of attempted forcible sodomy. Rayburn waived his right to a jury and proceeded with a bench trial. The trial court acquitted Rayburn of kidnapping but found him guilty of attempted forcible sodomy. Thereafter, the trial court entered judgment and sentenced Rayburn to seven years in prison. This appeal follows.

Point on Appeal

In his sole point on appeal, Rayburn alleges that there was insufficient evidence to support his conviction for attempted forcible sodomy. Specifically, Rayburn contends that the State presented no evidence that Rayburn took a substantial step toward the commission of a forcible sodomy because a mere threat with the capability to carry out that threat does not constitute an attempt.

Standard of Review

On a challenge to the sufficiency of the evidence, we will determine only whether there is sufficient evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt. State v. Scholl, 114 S.W.3d 304, 307 (Mo. App. E.D. 2003). The evidence, including all reasonable inferences drawn therefrom, is viewed in the light most favorable to the verdict, and all evidence and inferences to the contrary are disregarded. Id. We defer to the trial court's determinations of witness credibility and weight of the evidence. Id. The trier of fact may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances, and other testimony in the case. State v. O'Toole, 83 S.W.3d 622, 628 (Mo. App. E.D. 2002).

<u>Discussion</u>

"A person commits the offense of sodomy in the first degree if he or she has deviate sexual intercourse with another person . . . by the use of forcible compulsion." Section 566.060. "A person is guilty of an attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step toward the commission of the offense." Section 564.011.1. A substantial step is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. <u>Id.</u> "Thus, the crime of attempt has two elements: (1) the purpose to commit the underlying offense, and (2) the doing of an act which is a substantial step toward the commission of that offense." <u>State v. Bonich</u>, 289 S.W.3d 767, 771 (Mo. App. S.D. 2009) (internal quotations omitted).

Rayburn argues that his conviction for attempted forcible sodomy cannot stand because the State did not present sufficient evidence that he took a substantial step toward committing the offense. Rayburn acknowledges that he exposed his penis to Victim and threatened Victim with forcible sodomy. However, Rayburn posits that his conduct in immediately trying to assist Victim by taking her to Walgreens to get water when he thought she was experiencing a medical problem reflects his change of heart, and is not the conduct of a person who is firm in his intent and purpose to forcibly sodomize Victim.

As support for his argument, Rayburn suggests that <u>State ex rel. Verweire v. Moore</u>, 211 S.W.3d 89 (Mo. banc 2006) is instructive. In <u>Verweire</u>, the defendant got into an argument with a juvenile at an arcade. <u>Id.</u> at 91. The defendant pulled out a semi-automatic pistol, grabbed the juvenile by neck, jabbed the pistol in his side and cheek, and told the juvenile he would "blow his [f-ing] head off." <u>Id.</u> The defendant then left the arcade and was arrested shortly thereafter in possession of the loaded pistol. <u>Id.</u> The defendant was subsequently charged and pleaded

4

guilty to first-degree assault for "attempting to cause serious physical injury to a male juvenile by grabbing him by the throat while holding a .25 caliber handgun to his chest and his head and then pushing him." Id. In the subsequent *habeas corpus* proceeding, the Supreme Court found the evidence was not sufficient to establish that the defendant took a substantial step toward commission of the offense of first-degree assault. In its opinion, the Court explained:

> It is undisputed that when Verweire aimed the pistol at [the juvenile], he did not pull the trigger and that he soon retreated from the altercation without ever having attempted to fire the pistol. Under these circumstances, he did not have the intent to cause serious physical injury, but merely threatened to do so.
> . . . .
> [A]lthough the State contends that Verweire's statement threatening to "blow [the juvenile's] head off" provides the necessary intent to commit first-degree assault, a mere threat with the ability to carry out that threat does not necessarily constitute an attempt to commit a crime. Instead, there must be strongly corroborating evidence that it was the defendant's conscious object to carry out the threat.
> . . . .
> [T]he fact that Verweire voluntarily withdrew from the altercation without having fired or attempted to fire his weapon strongly negates any intent to seriously injure [the juvenile].

Id. at 92-93.

Rayburn analogizes his conduct to that of Verweire, reasoning that if Verweire's conduct amounted to nothing more than a threat and was not sufficiently corroborative of Verweire's conscious objective to carry out his threat, then neither was his. Rayburn maintains that because he never displayed or mentioned a weapon or attempted to restrain or touch Victim after initially threatening her, the evidence was insufficient to prove the substantial step element of attempted forcible sodomy. We disagree.

The record contains evidence sufficient to support a finding that Rayburn took a substantial step toward the commission of a forcible sodomy against Victim. Rayburn approached Victim while she was walking along a road at night and drove her to a park.

5

Rayburn then threatened to kill Victim if she did not perform oral sex on him. After making that threat, Rayburn removed his penis from his pants exposing himself to Victim. Moreover, upon his arrest, Rayburn admitted to the police that his intent was to beat Victim until she gave him oral sex. By Rayburn's own admission, his intent was not merely to threaten as in Verweire, but was to complete the act he had set in motion. This evidence is more than sufficient to allow the trial court, as the trier of fact, to reasonably conclude that Rayburn engaged in conduct that was strongly corroborative of the firmness of his intent to carry out his threat toward Victim and complete the offense of forcible sodomy.

While we acknowledge Rayburn's conduct of driving Victim to Walgreens, this fact does not overcome or otherwise void the substantial evidence that Rayburn engaged in conduct strongly corroborating his intent to force Victim to perform oral sex on him. Rayburn ignores a critical distinction between the facts of his case and the facts in Verweire. Notably, unlike in Verweire, the evidence before the trial court shows that Rayburn did not voluntarily withdraw from his initial threat of forcible sodomy. Rayburn argues that his actions in driving to Walgreens to get the Victim water demonstrated a change of heart sufficient to show that he did not intend to carry out his threat against Victim, although capable of doing so. But Rayburn did not back away from his threat of sexual assault before engaging in conduct strongly corroborative of his admitted intent to "beat [Victim] until she gave [him] a blow job." Rayburn retreated from his threat only after Victim took astute defensive action by feigning an asthma attack. The trial court reasonably could have inferred that had Victim not taken affirmative action to protect herself from Rayburn's threats, Rayburn would have completed his stated purpose of forcing Victim to perform oral sex on him. See State v. Hill, 408 S.W.3d 820, 824 (Mo. App. E.D. 2013) (distinguishing Verweire on the ground that defendant did not voluntarily

6

retreat from his initial threat but was intercepted by the police). See also, State v. Reese, 436 S.W. 3d 738 (Mo. App. W.D. 2014) (distinguishing Verweire given a reasonable inference that defendant would have continued his attack but for police intervention).

Rayburn suggests Verweire is instructive and must guide our holding because Rayburn did not retreat from his threat to Victim due to the intervention of law enforcement. We find this distinction inconsequential. The evidence presented in the record clearly shows that Rayburn did not experience his "change of heart" and withdraw from his conduct directed against Victim until after Victim took affirmative action to defend herself from Rayburn's impending assault. Whether the catalyst for Rayburn's withdrawal came from the police, third parties other than law enforcement officials, or from Victim, the simple fact remains that the impetus for Rayburn's withdrawal from his criminal activity did not initiate with him. Sufficient evidence exists from which the trier of fact could reasonably conclude that Rayburn would have committed forcible sodomy on Victim had Victim not intervened.

## Conclusion

The record contains sufficient evidence of Rayburn's purpose to commit a forcible sodomy on Victim and that he took a substantial step toward the commission of that offense. The judgment of the trial court is affirmed.

_____
Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., J., Concurs
Gary M. Gaertner, Jr., J., Concurs