

# In the Missouri Court of Appeals
# Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED107414 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | Honorable Richard K. Zerr |
| CARLTON JAMES DICKERSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 21, 2020 |

### Introduction

Carlton James Dickerson ("Dickerson") appeals from the trial court's judgment following jury convictions for one count of attempted rape in the first degree and two counts of sodomy in the first degree. Dickerson raises three points on appeal challenging the sufficiency of the State's evidence. In Points One and Two, Dickerson argues there was insufficient evidence to sustain his convictions on first-degree sodomy because the State did not prove Victim was incapable of consent due to intoxication in that Victim testified she pretended to be asleep and was capable of giving consent. In Point Three, Dickerson maintains there was insufficient evidence to sustain his conviction on attempted first-degree rape because the State did not prove he committed a substantial step towards and had the purpose of having intercourse with Victim. Because conflicting evidence is resolved in favor of the jury's verdict, and the jury could reasonably find from the evidence at trial that Victim was incapable of consent due to her level of intoxication, we deny Points One and Two. Because the State adduced sufficient evidence

from which the jury could find beyond a reasonable doubt that Dickerson took a substantial step to commit first-degree rape with the requisite purpose towards having intercourse with Victim who was incapable of consent, we deny Point Three. Accordingly, we affirm the trial court's judgment.

Factual and Procedural History

On December 3, 2017, Dickerson and his girlfriend ("Girlfriend") hosted a house-warming party, and Victim, a friend of Girlfriend, attended. Victim, not generally drinking at that time due to starting a new job, consumed two bottles of wine, a shot of tequila, and a mixed alcoholic beverage. Friends noted that Victim was slurring her words and seemed to be getting really tired. Victim began to feel ill and stated she wanted to drive home. Girlfriend suggested Victim stay the night because Victim was too drunk to drive safely. Girlfriend told Victim she could sleep in Girlfriend and Dickerson's bedroom, while Dickerson would sleep on the couch. Victim agreed. Shortly afterwards, Victim retired to the bedroom. Victim vomited twice in the bathroom attached to the bedroom, then passed out fully clothed in the bed. Girlfriend checked in on Victim several times.

At some point that night, Victim woke up and felt a hand touching her vagina on top of her jeans. Victim testified: "I started to feel something. I thought it was a dream, because I didn't know what was going on. I felt a hand on my vagina . . . . And then I slowly started coming to but not really because I didn't know what was going on." Victim heard a knock on the bedroom door, and the hand quickly pulled away. Victim then heard Dickerson and Girlfriend talking at the door. Victim stated she fell back asleep and "didn't know—I wasn't fully there" and "was still kind [of] in that dream state."

2

Victim woke again when she heard the bedroom door lock and felt someone sit on the bed beside her. Victim recognized Dickerson from his shirt and the back of his head. At that time, Victim had not "magically sobered up" from when she threw up and passed out until the time that Dickerson reentered the room. Victim pretended to be asleep because she was intoxicated, felt helpless, and was afraid of Dickerson. When asked whether she was awake when he unzipped her pants, Victim answered: "As much as I could be . . . . I was drunk. I was tired. I was just coming out of being passed out."

Dickerson inserted his hand under Victim's buttoned jeans and penetrated her vagina with his fingers. Dickerson unbuttoned Victim's jeans and pushed them down over Victim's legs locked in an open position. When asked whether it was "registering to you what all of this was and what was going on" as her pants were pulled down, Victim testified, "[n]ot really. I was just—I was scared and I was tired and I just didn't know what was going on." Dickerson pulled down Victim's underwear and performed oral sex on her. Victim kept her eyes closed and did not say or do anything because Victim was scared, tired, and "still feeling pretty drunk." Victim did not know what was going on and was still under the influence of alcohol when she decided to feign sleep. Victim also stated that she was not using her best judgment because she was impaired from drinking too much alcohol. Victim was intoxicated, did not want to have any sexual activity with Dickerson, and regretted not having fought him.

Dickerson attempted to have sex with Victim, but was unable to penetrate Victim's vagina. Dickerson instead began masturbating on top of Victim when someone began knocking on the door, then stopped, dressed, and went to the bathroom. When Dickerson opened the door, he placed both hands on either side of the doorframe and blocked the view into the bedroom with his body. Girlfriend asked what he was doing, and he responded that he had to use the bathroom.

Girlfriend and one of her friends looked over Dickerson's shoulder and saw Victim on the bed, uncovered with her pants down around her ankles. Girlfriend asked Dickerson if he had seen Victim like that, and Dickerson said he had not. Girlfriend covered Victim with a sheet, and Victim was still pretending to be asleep. Girlfriend then left Victim alone, but returned a few minutes later, and Victim then told Girlfriend what had happened.

When Girlfriend confronted Dickerson, he did not deny touching the Victim. Victim and Girlfriend told Dickerson to leave, and he refused, saying they would have to call the police. Victim first called Dickerson's mother, and then called the police. Victim was still feeling intoxicated when the police arrived shortly thereafter. When recounting the events to Girlfriend, Dickerson's mother, and the police, Victim stated that she had been passed out but had woken up and feigned sleep during the incident.

The police took Dickerson to the police station, where Detective Russ McDermott ("Det. McDermott") interviewed him. The State charged Dickerson with one count of rape or attempted rape in the first degree and two counts of sodomy or attempted sodomy in the first degree. For each count, the State alleged Dickerson knew that Victim "was incapable of consent because of intoxication." The case proceeded to a jury trial.

During cross-examination, Dickerson elicited mixed testimony from Victim about her level of awareness during the sexual contact. Specifically, Dickerson elicited testimony that at the time of the incident, Victim was awake, not black-out drunk, not incapacitated, and actively pretending to be asleep. When asked whether she was cognitively aware of what Dickerson was doing and that she did not want sexual contact with Dickerson, Victim agreed.

The recording of Dickerson's police interview with Det. McDermott was played for the jury but was not deposited with this Court. Det. McDermott provided the following testimony:

4

Dickerson indicated he believed Victim wanted to have sex with him because she flirted with him earlier that night and she moaned and assisted him in pulling down her pants. Dickerson initially denied and then agreed that Victim had been "like dead weight" when he attempted to have intercourse with her. Dickerson stated that, overall, Victim did not consent.

The trial court instructed the jury on one count of rape or attempted rape in the first degree (Count I) and two counts of sodomy or attempted sodomy in the first degree for making contact with Victim's genitals with his hand (Count II) and his tongue (Count III) "knowing that [Victim] lacked capacity to consent because of intoxication and was known by [Dickerson] to be unable to make a reasonable judgment as to the nature or harmfulness of the deviate sexual intercourse[.]"

At the close of all evidence, Dickerson filed a motion for a judgment of acquittal, alleging the State failed to present evidence that Victim was incapable of giving consent due to intoxication because Victim testified she was awake during the incident and thus was not incapable of giving consent. The jury convicted Dickerson on Count I for attempted first-degree rape and on both Count II and III for first-degree sodomy. Dickerson renewed his sufficiency-of-the-evidence claim in his motion for a new trial. The trial court denied the motion for acquittal, noting it would not second-guess the jury's factual findings and guilty verdicts. Dickerson was sentenced as a prior offender and persistent assault offender to a total of fifteen years in prison. Dickerson now appeals.

Points on Appeal

Dickerson raises three points on appeal, each challenging the sufficiency of the evidence. Point One maintains the trial court erred in overruling Dickerson's motion for acquittal on Count II for first-degree sodomy because the State presented insufficient evidence of the essential

element that the victim be incapable of consent due to intoxication in that Victim testified she pretended to be asleep and was capable of giving or denying consent. Point Two asserts the same sufficiency-of-the-evidence claim as to Count III for first-degree sodomy. Point Three asserts the trial court erred in overruling Dickerson's motion for acquittal as to Count I for attempted first-degree rape because the State presented insufficient evidence of the essential elements that Dickerson's purpose was to have sexual intercourse with a person who was incapable of consent and that Dickerson committed a substantial step towards having intercourse with Victim.

Standard of Review

To determine whether the State's evidence at trial was sufficient to support a conviction and withstand a motion for judgment of acquittal, we review whether the State presented sufficient evidence from which a reasonable juror could have found beyond a reasonable doubt that the defendant committed the charged offense. State v. Stewart, 560 S.W.3d 531, 533 (Mo. banc 2018) (internal citation omitted). Our assessment is not "whether this [C]ourt believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." State v. Johnson, 576 S.W.3d 205, 230 (Mo. App. W.D. 2019) (quoting State v. Naylor, 510 S.W.3d 855, 859 (Mo. banc 2017)).

We do not reweigh the evidence on appeal. State v. Nash, 339 S.W.3d 500, 509 (Mo. banc 2011). We accept as true all evidence and inferences in the light most favorable to the verdict, and disregard contrary evidence and negative inferences. Stewart, 560 S.W.3d at 533. However, we will not "supply missing evidence or give the [State] the benefit of unreasonable, speculative[,] or forced inferences." State v. Prince, 525 S.W.3d 596, 598 (Mo. App. E.D. 2017)

6

(internal quotation omitted). We defer to the factual findings of the jury, who "may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances, and other testimony in the case." State v. Freeman, 269 S.W.3d 422, 425 (Mo. banc 2008) (internal quotation omitted); see also State v. Kinsella, 578 S.W.3d 802, 814 (Mo. App. E.D. 2019) (internal citation omitted) ("Conflicts in the evidence, the determination of the credibility of witnesses, and the weight to be given their testimony are issues for the jury to resolve, not this Court."). To the extent that a sufficiency challenge raises an issue of statutory interpretation, we conduct de novo review. State v. Bernhardt, 338 S.W.3d 830, 834 (Mo. App. E.D. 2011) (internal citation omitted).

## Discussion

**I.      Points One and Two—Sufficiency of the Evidence Regarding Capability of Consent**

In his first two points on appeal, Dickerson alleges the State did not sufficiently prove that Victim was incapable of consent due to intoxication in order for the jury to find Dickerson guilty of first-degree sodomy on Counts II and III. In particular, Dickerson reasons that Victim's testimony of being awake and feigning sleep while Dickerson sodomized her precludes a finding that Victim was incapable of consent due to intoxication.

For the first-degree sodomy charges in Counts II and III, the State charged Dickerson with having deviate sexual intercourse with a person who he knew was incapable of consent because of intoxication. "A person commits the offense of sodomy in the first degree if he or she has deviate sexual intercourse with another person who is incapacitated, **incapable of consent**, or lacks the capacity to consent[.]" Section 566.060.1 (emphasis added).[1] Missouri law

---

[1] All Section references are to RSMo (2016).

recognizes that "consent or lack of consent may be expressed or implied." Section 556.061(14).

Further,

> Assent does not constitute consent if:
> (a) It is given by a person who lacks the mental capacity to authorize the conduct charged to constitute the offense and such mental incapacity is manifest or known to the actor; or
> **(b) It is given by a person who by reason of youth, mental disease or defect, intoxication, a drug-induced state, or any other reason is manifestly unable or known by the actor to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the offense; or**
> (c) It is induced by force, duress, or deception[.]

Id. (emphasis added).

Here, lack of consent is not disputed on appeal. Dickerson's requested relief pursuant to oral argument is for this Court to enter convictions and remand for sentencing on Counts II and III for the lesser offense of second-degree sodomy, on which the jury was also instructed, which requires establishing only that Victim did not consent to Dickerson touching or licking her genitals.

Victim's consistent testimony that she was awake and pretending to be asleep when Dickerson sodomized her presents a challenging fact pattern on appeal. Although the following discussion will make clear that Dickerson's claim is resolved as a matter of evidentiary sufficiency, Dickerson's argument also raises a question of statutory interpretation by suggesting that the law requires evidence that Victim be passed out and lacked consciousness during the incident. The State counters that being incapable of consent can be compatible with an intoxicated person being awake and feigning sleep.

Although Section 566.060.1 distinguishes a victim who lacks capacity from a victim who is incapable of consent, the two concepts are often intermingled, as the definitions share some overlap regarding the victim's situational awareness. See Section 556.061(28) (defining

8

"incapacitated" as "a temporary or permanent physical or mental condition in which a person is unconscious, unable to appraise the nature of his or her conduct, or unable to communicate unwillingness to an act"); Section 566.060.1; see also Missouri Approved Instructions-Criminal 4th 420.012 (2018). However, this appeal relates solely to a victim alleged to have been incapable of consent. The statutory language defining "incapable of consent" clearly encompasses a victim who may be awake but is "unable to make a reasonable judgment" at the time of the incident concerning the nature or harmfulness of the defendant's conduct. See Section 556.061(14)(b). Thus, a victim feigning sleep during a sexual assault is not necessarily incompatible with finding that victim was unable to make a reasonable judgment about the defendant's conduct as a result of his or her level of intoxication. See id.

Missouri cases as far back as the early twentieth century acknowledge the breadth of what evidence may support a jury's finding that a victim is incapable of consent. See, e.g., State v. Atkins, 292 S.W. 422, 426 (Mo. 1926) (noting that a victim does not need to be asleep to support a finding that the victim is incapable of consent, such as a case of where the victim is awake but surprised by the defendant's sexual assault with no opportunity to consent or when "so drunk as to be utterly senseless and incapable of consenting"). As our sexual-offense laws have developed, juries have retained the ultimate authority to determine if the State has met its burden to prove a first-degree sexual offense involving an intoxicated victim incapable of consent. See, e.g., State v. Speed, 551 S.W.3d 94, 96, 99 (Mo. App. W.D. 2018) (affirming a second-degree rape jury conviction from a charge of first-degree rape involving an intoxicated victim). In Speed, the Western District upheld the trial court's admission of drug evidence for its relevance to the victim's state of mind just prior to the sexual offense because defense counsel disputed the victim's claim that she was "blacked out" and unconscious from drinking alcohol

9

and smoking marijuana before waking up to defendant having intercourse with her without her consent. Id. at 96, 99. Another recent case affirmed a sexual-assault conviction involving a victim unable to consent due to intoxication. See State v. Julius, 453 S.W.3d 288, 304–05 (Mo. App. E.D. 2014) (finding the defendant was not prejudiced by jury instructions including irrelevant definitions of consent, namely lack of consent due to mental incapacity or force, where the State clearly focused its evidence and argument on lack of consent due to the victim's intoxication). In Julius, the State adduced evidence involving a victim's limited consciousness after a night of heavy drinking. Id. at 293. Specifically, after drinking wine and other alcoholic beverages, the victim felt like her body was "shutting down" and she was "kind of carried" to the bedroom where he had sexual intercourse with her while she could not move or talk and eventually lost consciousness, remembering only "bits and pieces" of the events that transpired. Id. Although neither Speed nor Julius directly address a sufficiency claim, both cases illustrate the relevant evidence to be considered, particularly details of the victim's intoxicated state on which a jury could rely in reaching its findings. See Speed, 551 S.W.3d at 99; Julius, 453 S.W.3d at 304–05.

Turning to cases discussing evidentiary sufficiency, a recent Western District case held sufficient evidence supported a defendant's guilty plea to first-degree rape where the defendant initially denied then acknowledged that the victim was so intoxicated that "she would not have had the capacity to consent and to the point where she would be incapable of consent." State v. Knox, 553 S.W.3d 386, 395–96 (Mo. App. W.D. 2018). During the plea hearing in that case, the defendant agreed that the victim had been "very drunk" but disagreed with the State's assertion that the victim had been "passed out," stating he "didn't think she was incapacitated at the time to where she couldn't consent. But I do believe that in the situation that it was, I do believe it

10

was not right." Knox, 553 S.W.3d at 390. The plea court inquired further in the following

exchange:

> Plea court: It's my understanding there was some alcohol consumed—
> Defendant: Yes, sir.
> Plea court:  —and that maybe she had consumed it to the point where she had actually threw up? . . .
> Plea court: Okay. That would be an indication that she was pretty drunk.
> Defendant: Yes, sir.
> Plea court: And drunk enough that she probably didn't have—or she would not have had the capacity to consent and to the point where she would be incapable of consent. Would you agree with that?
> Defendant: Yes, sir.
> Plea court: And even though she was in that condition, you went ahead and had sexual intercourse with her?
> Defendant: Yes, sir.
> Plea court: And you understand why that is now a problem?
> Defendant: Yes, sir.

Id. at 391. On appeal, challenging the voluntariness of his plea, the Western District found this

exchange sufficient to uphold the defendant's guilty plea. Id. at 396. In particular, the Western

District rejected the defendant's assertion that he never told the plea court that he had sexual

relations with a person incapable of consent because the record showed the defendant had agreed

with the plea court that the Victim was drunk to the point that "she would not have had the

capacity to consent and to the point where she would be incapable of consent." Id. at 395–96.

Thus, a finding that the victim was passed out, blacked out, or otherwise unconscious is not

required to support a conviction for having sexual relations with a person who is manifestly

unable to or known by the defendant to be incapable of consent due to intoxication. See id.;

Sections 556.061(14)(b), 566.060.1; see also Speed, 551 S.W.3d at 99; Julius, 453 S.W.3d at

304–05.

In light of finding that Missouri law does not mutually exclude feigning sleep and being incapable of consent due to intoxication, the crux of our holding in this case ultimately owes to our deferential standard of review for the jury's credibility judgments and factual findings. See Freeman, 269 S.W.3d at 425; Johnson, 576 S.W.3d at 230. Dickerson's argument is most critically undermined by its reliance on testimony that the jury evidently disbelieved in light of its verdict. In particular, Dickerson relies heavily on Victim's responses during cross-examination that when Dickerson sodomized her, Victim was not black-out drunk, not incapacitated, and was cognitively aware of what Dickerson was doing, that she did not want it, and that she wished she had fought him off or otherwise denied consent more than attempting to lock her legs in place. We acknowledge that such statements could support an opposite finding on this element and an acquittal on the first-degree sodomy charges. However, we equally acknowledge the jury's unfettered right to disbelieve and disregard these statements in light of other evidence presented at trial that Victim was so intoxicated as to be unable to make a reasonable judgment as to the nature or harmfulness of Dickerson's conduct. See Freeman, 269 S.W.3d at 425. In cases involving conflicting evidence rather than a lack of evidence, we are constrained by our standard of review to resolve conflicting evidence in favor of the jury's factual and credibility findings and verdict. See Kinsella, 578 S.W.3d at 814.

The State adduced substantial evidence addressing Victim's level of intoxication sufficient to allow a jury finding that she was incapable of consent: Victim drank a large quantity of alcohol consisting of two bottles of wine and two other alcoholic beverages despite not being a heavy drinker at the time; Victim became intoxicated to the point of slurring her words; Victim became ill from the alcohol and vomited twice; Victim passed out unconscious in Dickerson and Girlfriend's bedroom; at one point Dickerson found Victim on the floor in the

12

bathroom; Victim was just coming out of being passed out when Dickerson began touching her above her clothes; Victim was like dead weight when Dickerson was touching her sexually; and Victim was still feeling the effects of intoxication when the police arrived.[2]  See, e.g., Knox, 553 S.W.3d at 390, 395–96 (where the victim was very drunk, had vomited, and the defendant agreed the victim was drunk to the point where she would be incapable of consent); Julius, 453 S.W.3d at 304–05 (where the victim became intoxicated from drinking wine and other alcohol and the defendant "kind of carried" the victim to the bedroom where he had intercourse with her while she could not move or talk and eventually lost consciousness).  From this evidence, a juror could reasonably find, without making a forced or speculative inference, that Victim was manifestly unable or known by Dickerson to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct so as to be incapable of consent by reason of intoxication.  See Section 556.061(14)(b); Prince, 525 S.W.3d at 598.

We readily ascertain the difficulty Dickerson identifies in apprising at what point a victim transitions from being merely intoxicated to being so intoxicated as to be incapable of consent.  See, e.g., Commonwealth v. Urban, 853 N.E.2d 594, 598 (Mass. App. Ct. 2006), aff'd on other grounds, 880 N.E.2d 753 (Mass. 2008) (cautioning against jury instructions misstating the law as "whenever a person is intoxicated, that person, as matter of law, is incapable of consenting to sexual intercourse"); see also 75 C.J.S. Rape § 30 (2020) (stating the relevant inquiry is whether "the nature and degree of the intoxication has gone beyond the stage of merely reduced inhibition and has reached a point where the victim does not understand the nature or

---

[2] We only refer to evidence regarding Dickerson's statements to police that were mentioned in the trial transcript by Det. McDermott because the interview recording was not deposited with the Court.  However, we may presume evidence not attached to the record on appeal supported the verdict, such as Dickerson allegedly stating that he had to help Victim walk to the bed when he found her passed out in the bathroom and that he felt worse when he realized Victim had actually been awake and pretending to be asleep during the incident.  See State v. Watson, 512 S.W.3d 94, 95 n.2 (Mo. App. W.D. 2017) (internal citations omitted).

consequences of the sexual act").  We note that the record clearly shows Victim was heavily intoxicated, and the State is not arguing Victim was incapable of consent merely by being mildly intoxicated so as to risk criminalizing drunken consensual sex.  See Urban, 853 N.E.2d at 598; 75 C.J.S. Rape § 30.

Furthermore, the very challenge raised by Dickerson underscores why a jury is better suited to make a factual determination of an individual's level of intoxication and whether it rendered that individual unable to reasonably judge the nature or harmfulness of the sexual conduct.  See Stewart, 560 S.W.3d at 533; Nash, 339 S.W.3d at 509; but see People v. Dunham, 172 A.D.3d 1462, 1465–66 (N.Y. App. Div. 2019) (finding no abuse of discretion in admitting expert testimony about alcoholic stupor where victim was alleged to be unable to consent due to physical helplessness resulting from intoxication).  Our review is limited to the bare transcript and record on appeal, whereas the jury was able to consider the Victim's stature and demeanor as well as the tone of her voice.  See Kinsella, 578 S.W.3d at 814.  Dickerson now attempts to refine his claim by alleging the State's theory of the case was not that Victim was too intoxicated to consent but that she pretended to be asleep because she was afraid.  However, Dickerson did not raise any point on appeal challenging the jury instructions or the State's closing argument. See Julius, 453 S.W.3d at 304–05 (finding no prejudice from jury instructions including other definitions of lack of consent where the State had adduced facts and argument about the victim's lack of consent due to intoxication).  Just as we decline the State's invitation to consider whether the State proved first-degree sodomy based on conduct under a different aspect of the offense than charged or presented at trial, such as incapacity or forcible compulsion, likewise we reject Dickerson's invitation for us to consider any claims of error not raised in his points on appeal. See State v. Zetina-Torres, 482 S.W.3d 801, 809 (Mo. banc 2016) (noting a claim is reviewed

14

based upon how the crime was charged and not how the jury was instructed); State v. Walther, 581 S.W.3d 704, 706 n.2 (Mo. App. E.D. 2019) (internal citation omitted) (noting a point not raised on appeal is considered waived); see also McCormick v. United States, 500 U.S. 257, 270 n.8 (1991) ("Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury.").

The jury was free to find credible some but not all of Victim's testimony, disregarding her affirmative responses to questions about her cognitive awareness and capacity to give or deny consent, while accepting her statements that she "was drunk . . . tired . . . [and] just coming out of being passed out" when Dickerson was taking off her pants, and was "[s]till feeling pretty drunk" and not "registering" what was going on because she "was scared . . . tired . . . and [she] just didn't know what was going on" when Dickerson began touching and performing oral sex on her. See Freeman, 269 S.W.3d at 425; Prince, 525 S.W.3d at 598. The jury was likewise free to reject Dickerson's statements to Det. McDermott indicating he believed Victim was consenting and accept Det. McDermott's testimony that Dickerson stated he had at one point found Victim on the bathroom floor and that Dickerson conceded Victim had been like "dead weight" during the incident. See Nash, 339 S.W.3d at 509 (citing Freeman, 269 S.W.3d at 425). Additionally, that Victim later regretted not having acted differently by verbally or physically expressing her lack of consent is not unusual for a victim's testimony in a rape case, and it was for the jury to determine from the whole of the evidence before it whether Victim had in fact been capable of handling Dickerson's sexual advances differently. See id; see also Johnson v. State, 832 S.E.2d 676, 678–79 (Ga. Ct. App. 2019) (internal quotations omitted) (noting the relevant inquiry is "the reasonableness of the testimony as to lack of consent, not the reasonableness of [the victim's] fear" in a case finding the victim incapable of consent due to

15

intoxication where she passed out in the bedroom of her friends' home after drinking and was "so out of it" that she "didn't know what was going on at first," and "she only became fully conscious and realized something was wrong" when the defendant penetrated her).

Here, the jury's verdict suggests it found Victim incapable of giving valid consent due to her severely intoxicated state. We are not persuaded the jury made a forced inference in determining that Victim was manifestly unable to consent when Dickerson sexually advanced on Victim in his bed where she was sleeping off her intoxication after vomiting and passing out from consuming too much alcohol at his party. Therefore, absent statutory or precedential authority explicitly stating that a person must be asleep, passed out or otherwise unconscious to be found incapable of consent because of intoxication, our standard of review mandates we disregard Victim's contrary testimony that she was cognizant of the harmfulness of the act at the time and defer to the jury's reasonable assessment of the facts presented at trial that Victim was not exhibiting a reasonable judgment or appreciating the harmfulness of Dickerson's conduct. See Stewart, 560 S.W.3d at 533; Johnson, 576 S.W.3d at 230.

We conclude that the State adduced sufficient evidence from which a reasonable juror could find that Victim was incapable of consent due to intoxication, was unable to make a reasonable judgment as to the nature or harmfulness of the act, and was ultimately unable to communicate her unwillingness due to her intoxicated state of mind. See Sections 556.061(14)(b), 566.060.1; Johnson, 576 S.W.3d at 230; Knox, 553 S.W.3d at 396. Accordingly, the trial court did not err in overruling Dickerson's motion for acquittal. See Stewart, 560 S.W.3d at 533. We deny Points One and Two.

## II.     Point Three—Sufficiency of the Evidence for Count I

In Point Three, Dickerson challenges the sufficiency of the evidence for his conviction on Count I, attempted rape in the first degree. Specifically, Dickerson maintains the State did not present sufficient evidence that Dickerson had the purpose to have intercourse with Victim who was incapable of consent or that Dickerson took a substantial step towards committing first-degree rape.

"A person commits the offense of rape in the first degree if he or she has sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion." Section 566.030.1. Missouri's general attempt statute provides that a person is guilty of an attempt to commit a criminal offense "if, with the purpose of committing the offense, a person performs any act which is a substantial step towards the commission of the offense." Section 562.012.1. The State must therefore prove both (1) that the defendant had the purpose to commit the underlying offense and (2) that the defendant acted by taking a substantial step toward the commission of that offense. State v. Rayburn, 457 S.W.3d 760, 762 (Mo. App. E.D. 2014) (internal citation omitted).

First, Dickerson posits the State did not sufficiently prove his intent to have sexual intercourse with a person who was incapable of consent because Victim was awake and feigning sleep and thus not so intoxicated as to be incapable of consent. As discussed in the analysis of Points One and Two, we find the jury could have reasonably concluded from the evidence that Victim was incapable of consent due to intoxication.[3] Dickerson further maintains that the State

---

[3] We additionally recognize the State's correct statement of law that even were we to accept Dickerson's argument that Victim being awake and feigning sleep meant she could not be found incapable of consent due to intoxication, it would not be dispositive of Point Three because factual impossibility is not a defense to attempt. See Section 562.012.2 ("It is no defense to a prosecution that the offense attempted was, under the actual attendant circumstances, factually or legally impossible of commission, if such offense could have been committed had the attendant circumstances been as the actor believed them to be."). Thus, it would be sufficient to uphold Dickerson's conviction on attempted first-degree rape regardless of Victim's actual cognitive state given the evidence adduced at

17

could not prove sufficient intent to commit the attempted offense based on Det. McDermott's testimony that Dickerson expressed during his police interview that he believed Victim wanted to have sex with him because she flirted with him that night, she moaned during the incident, and assisted him in pulling down her pants. However, we defer to the jury's determinations on credibility and evidentiary weight, and the jury's verdict clearly demonstrates it did not find these assertions credible and assigned more weight to contrary evidence. See Nash, 339 S.W.3d at 509; Freeman, 269 S.W.3d at 425. In particular, Det. McDermott testified that Dickerson gave contradictory responses about Victim's level of intoxication and ability to consent and that Dickerson affirmed that overall Victim did not consent to the encounter. Additionally, as discussed in the preceding section, ample evidence demonstrated that Victim did not want to have sex with Dickerson and that, although she did not attempt to physically or verbally fight him off, her stillness and silence did not constitute assent given her incapability of consent due to intoxication. See Freeman, 269 S.W.3d at 425.

Further, Dickerson's reliance on State v. Barbee, 568 S.W.3d 28, 33 (Mo. App. W.D. 2018) is misplaced because there the jury had ***not*** been instructed on ***attempted*** first-degree statutory rape, only the underlying offense, thus "even if [the Court could] reasonably infer that [the defendant's] purpose was to engage in sexual intercourse, the problem remains that the jury was never tasked with making such a finding." Here, in contrast, the jury was specifically instructed on attempted first-degree rape. See id. We also find distinguishable State v. Ess, 453 S.W.3d 196, 208 (Mo. banc 2015), where insufficient evidence supported the intent to commit attempted first-degree child molestation in that the evidence only showed touching above clothing as opposed to the required element of skin-to-skin contact. Here, the evidence at trial

_____

trial that Dickerson perceived her as being passed out from alcohol when he attempted to have sexual intercourse with her. See id.

was sufficient to show Dickerson's intent to have intercourse with Victim while she was incapable of consent due to intoxication because Dickerson lowered Victim's pants and underwear and attempted to put his penis inside her vagina but was not able to do so, and Dickerson's semen was recovered from an internal swab of Victim's vagina. See id.; State v. Bjorgo, 571 S.W.3d 651, 657–58 (Mo. App. W.D. 2019) (internal citations omitted) (describing sufficient circumstantial evidence from which to infer intent to commit sexual assault).

Dickerson next contends that the State's evidence did not demonstrate a substantial step to sustain his conviction for attempted first-degree rape. To prove attempt, the State does not have to prove that every essential element of the offense occurred. See Section 562.012; Bjorgo, 571 S.W.3d at 657 (citing State v. Kendus, 904 S.W.2d 41, 43 (Mo. App. S.D. 1995)) (noting the attempt statute "does not require that an actual and specific attempt be made to perform each and every element of the crime"). Rather, the State must prove the defendant took a substantial step, which Missouri law defines as conduct that "is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Section 562.012.1. A substantial step "need not be the ultimate step toward, or the last possible act in the consummation of the crime attempted." State v. Bonich, 289 S.W.3d 767, 771 (Mo. App. S.D. 2009) (quoting Kendus, 904 S.W.2d at 43).

Here, the State adduced sufficient evidence that Dickerson took a substantial step towards committing first-degree rape by the following: locking himself alone in a bedroom with Victim, who appeared to be passed out due to drinking a large amount of alcohol; removing Victim's pants and underwear, performing oral sex on Victim, removing his pants, straddling Victim, attempting to put his penis inside Victim's vagina, and attempting to block witnesses from seeing Victim's unclothed and unmoving state after delaying opening the door in response to knocking.

19

Additionally, an internal swab of Victim's vagina later tested positive for Dickerson's semen. A jury could reasonably infer therefrom that Dickerson took these steps with the purpose to have sexual intercourse with Victim while she was incapable of consent due to intoxication. See Bonich, 289 S.W.3d at 771; see also Johnson, 576 S.W.3d at 231 (finding evidence of defendant drugging victim and removing her clothing, a delayed response to police and a friend at the door, lubricant near the bed where victim was found, and inconsistent statements of defendant supported a conviction for attempted first-degree sexual abuse); State v. Sander, 481 S.W.3d 907, 913 (Mo. App. E.D. 2016) ("[I]t is reasonable to infer that *trying* to penetrate a victim's vagina is an act that causes some penetration.").

Because sufficient evidence supports the jury's finding that Dickerson had the purpose of and took a substantial step towards committing first-degree rape, we affirm Dickerson's conviction for the attempted offense and find no error in the trial court's denial of Dickerson's motion for acquittal. See Bjorgo, 571 S.W.3d at 657; Rayburn, 457 S.W.3d at 762; Bonich, 289 S.W.3d at 771. Point Three is denied.

### Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, Judge

Philip M. Hess, P.J., concurs.
Lisa P. Page, J., concurs.

20